IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROY L. ELLIS,<br><br>Petitioner,<br><br>vs.<br><br>ROB JEFFREYS, Director, Nebraska Department of Correctional Services,<br><br>Respondent. | **8:23CV315**<br><br>**MEMORANDUM AND ORDER ON PETITIONER'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION RELATING TO PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS** |

This case is before the Court on Petitioner Roy L. Ellis's (Petitioner's) Objections to Magistrate Judge's Findings and Recommendation relating to Petitioner's habeas corpus action pursuant to 28 U.S.C. § 2254. Filing 1 (Petition for Writ of Habeas Corpus); Filing 62 (Findings and Recommendation); Filing 69 (Objections). On April 25, 2008, a Nebraska jury found Petitioner guilty of first-degree murder. Filing 13-15 at 37. That same jury reconvened on April 28, 2008, and unanimously found beyond a reasonable doubt that the State had proven two statutory aggravators set forth in Neb. Rev. Stat. § 29-2523(1). Filing 13-26 at 123–24. A three-judge sentencing panel (the Panel) was named pursuant to Neb. Rev. Stat. § 29-2521 on April 30, 2008, for the purpose of considering mitigating or aggravating circumstances. Filing 13-15 at 68. On December 19, 2008, the matter came before the Panel for a hearing. Filing 13-15 at 125. On February 9, 2009, the Panel sentenced Petitioner to death. Filing 13-15 at 124–52. As described below, Petitioner has unsuccessfully challenged this death sentence on both direct appeal and postconviction proceedings.

On January 9, 2026, United States Magistrate Judge Ryan C. Carson issued a Findings and Recommendation relating to the Petition for Writ of Habeas Corpus that Petitioner filed with this

Court. *Ellis v. Jeffreys*, 8:23CV315, 2026 WL 123276 (D. Neb. Jan. 9, 2026) (accessible at Filing 62). Judge Carson found no merit in the Petition and recommended *inter alia* that the Petition be dismissed. *Id.* at *1, *37. Petitioner timely objected to Judge Carson's recommended disposition. Filing 69. The Court has conducted a *de novo* review of Petitioner's Objections and, for the reasons stated below, overrules the Petitioner's Objections, accepts Judge Carson's recommended disposition, denies the Petition for Writ of Habeas Corpus, denies any request for reconsideration or evidentiary hearing, and declines to issue a certificate of appealability. Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.")

## I. INTRODUCTION

### A. Factual Background

In assessing petitions under § 2254, federal courts regularly use the state court's recitation of basic underlying facts. *See, e.g.*, *Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing the state court's recitation of facts on review of federal habeas petition). The Nebraska Supreme Court included the following background in its opinion issued on direct appeal. *State v. Ellis*, 799 N.W.2d 267, 278–80 (Neb. 2011) (available at Filing 13-1).

> Amber [Harris] disappeared on November 29, 2005, after she was dropped off by her school bus about five blocks from her North Omaha, Nebraska, home. A few weeks later, Ellis was arrested and incarcerated in the Douglas County Correctional Center on unrelated charges. Several witnesses reported that while in jail, before Amber's body was found or Ellis was a suspect in her killing, he made a number of remarks suggesting that he was involved in Amber's disappearance.
>
> To begin with, Ellis made telephone calls from jail suggesting that he needed to get out of jail to take care of some things and "find some stuff." Ellis had lived in a boarding house on Lake Street, although he moved to another residence nearby before Amber disappeared. While in jail, Ellis called his former neighbors,

asking repeatedly about any activity at the boarding house. But no more of those calls were made after February 14, 2006, when Amber's bookbag was found in a large trash storage container behind the boarding house. Although Ellis continued to call his former neighbor after the bag was found, he no longer asked about the boarding house.

While he was incarcerated during early 2006, Ellis also repeatedly asked Terrelle Smith, a Douglas County corrections officer, for information regarding Amber's case. Because Smith was studying criminal justice, Ellis also asked him questions about criminal investigation, regarding subjects such as fingerprint identification and the decomposition of buried bodies. Ellis asked Smith whether blood or semen left outside would be contaminated by the elements and how long it would take before contaminated semen would no longer be considered relevant evidence. And Ellis asked Smith for books on forensics and DNA examination. Ellis also asked Brandon Clark, another corrections officer, about how long semen would last inside a dead body and in a forested, rural area and asked Clark to perform Internet research for him on the subject.

Ellis also asked Darryl Chambers, a fellow inmate, if he knew how long semen would last inside a decomposed body. And another inmate, Clarence Dennis, heard Ellis asking other inmates questions about how long blood and semen would last when exposed to the elements and what was necessary to keep dirt from subsiding above a buried body. Clenix Martin, another inmate, said Ellis had asked him about the persistence of DNA left outside, whether DNA could be traced after a body had decomposed, and how long it took a body to decompose.

Ellis also made more particular statements that foreshadowed what would be discovered about the circumstances of Amber's disappearance after her body was found. Dennis heard Ellis say that he had previously taken women to Hummel Park, in a rural area north of Omaha, and forced them to have sex with him by threatening to leave them in the park alone at night. Smith overheard Ellis saying that if a woman did not do what he wanted, "[h]e would just hit them upside their heads." Ellis told Chambers that he liked underage girls. Ellis told his cellmate, David Shaffer, that he had sexually molested underage girls, some of them at Hummel Park.

Shaffer said that Ellis expressed an unusual interest in Amber's disappearance and cut out newspaper articles about the case. Ellis told Martin that he had sexually assaulted a young girl and strangled her. When Shaffer mentioned to Ellis that it was "crazy what happened to that Amber Harris girl," Ellis replied, "that's why I got to get out and cover my tracks." And both Dennis and Chambers said Ellis had admitted to sexually assaulting Amber and striking her in the head. According to Dennis, Ellis said he hit Amber in the head with a hammer.

Finally, on May 11, 2006, Amber's decomposed body was discovered by passers-by, covered with a mound of soil, in a secluded, wooded area of Hummel Park. Amber had been killed by blunt force trauma to the skull, resulting from at

> least two blows to the head with a blunt object. Because of decomposition, it was impossible to tell whether Amber had also been choked or strangled. Although Amber's sweater was still on, her jeans and underwear had been removed. Amber's jacket, jeans, and bra had been found in her bookbag. Amber's blood was on the jacket and jeans, and DNA was found on the jeans, in a shape resembling a handprint, in a mixture from which Ellis could not be excluded as a contributor.

Filing 13-1 at 5–6.

### B. Procedural Background

*1. Pretrial Motions*

Several pretrial motions preceding Petitioner's April 2008 trial are relevant to the Court's § 2254 analysis. The State sought to offer evidence that Petitioner had sexually assaulted his two stepdaughters Aquanta Birge and Aisha Birge at trial. Filing 13-1 at 5–6. The stepdaughters were between 12 and 15 years old at the time of the alleged sexual assaults. Filing 13-1 at 5–6. Accordingly, the State filed a motion pursuant to Nebraska Rule of Evidence 27-404. Filing 13-14 at 8. The motion requested a hearing "regarding use of 27-404 evidence of other wrongs, crimes, or acts for the purpose of proving motive, opportunity, intent . . . [and] identity." Filing 13-14 at 8. The State also sought to offer evidence at trial of an alleged sexual assault committed by the Petitioner against Camille Ellis and a purported abduction committed by the Petitioner against Antoinette Pollock. Filing 13-14 at 8.

Petitioner filed a motion *in limine* in order to exclude the above evidence, saying *inter alia* that "the evidence the State seeks to adduce is not relevant to Defendant's innocense [sic] or guilt in the present case, and, if minimally relevant, said evidence is not admissible for any of the specific purposes enumerated in the statute." Filing 13-14 at 11. Petitioner also asserted that "the State's motion, as plead, gives neither the court nor the Defendant any insight or notice as to the State's specific theory or theories of admissibility, assuming the court finds the evidence to be relevant." Filing 13-14 at 11.

The trial court granted in part and denied in part both motions. Filing 13-14 at 17–36. The trial court found that the evidence of the sexual assaults allegedly committed against the stepdaughters—Aquanta and Aisha—was "independently relevant to the crime charged" and that the similarities between the crime at issue in the trial and the alleged sexual assaults made the evidence probative of identity and intent. Filing 13-14 at 17–36. The Court will refer to this evidence as the "Propensity Evidence." Petitioner's motions requesting reconsideration were denied. Filing 13-14 at 96–97, 108–109. Petitioner filed a later motion *in limine* seeking to prohibit the State from adducing testimony or evidence from Antoinette with respect to Petitioner's connection to Hummel Park. Filing 13-14 at 117–18. The trial court granted this motion "at least as to jury selection and the State's opening statement at trial." Filing 13-14 at 134.

The State also sought to offer testimony from certain "jailhouse informers." Filing 13-17 at 191–95. Specifically, the State sought "testimony from someone the defendant did tell that he sexually assaulted Amber Harris prior to her death." Filing 13-17 at 191–95. The trial court denied Petitioner's motion to exclude the testimony of Clarence Dennis on that issue and also denied Petitioner's motion to exclude the testimony of another informer, Clenix Martin. Filing 13-14 at 129–33. A week before the trial began, Petitioner filed a motion to continue, which sought *inter alia* the exclusion of the testimony of Dennis and Martin; the trial court denied that motion. Filing 13-14 at 129–33. The trial judge also denied a motion seeking recusal and reassignment on the ground that the judge was biased because he had presided over a previous case involving Petitioner, where Antoinette had been the named victim. Filing 13-15 at 15–16; Filing 13-17 at 196–99.

Petitioner also filed a motion to change venue. Filing 13-14 at 41. Petitioner requested in the alternative that the jury pool be drawn from another county because of certain news coverage and publicity. Filing 13-14 at 41–45. Also, a motion seeking the exclusion of evidence or testimony

of PCR DNA testing was filed. Filing 13-14 at 41–45. These motions were denied. Filing 13-14 at 70–93. The trial court also made rulings relating to jury selection. The trial court allowed Petitioner to examine prospective jurors during *voir dire* regarding capital punishment and their knowledge of the case. Filing 13-14 at 104, 106. Additionally, the trial court restricted the State from referencing alleged drug use and/or distribution, certain DNA evidence, tools Petitioner allegedly possessed, and Petitioner's criminal history in jury selection and in the State's opening statement. *See* Filing 13-14 at 101–02, 111–12.

Petitioner also filed a motion to prohibit imposition of the death penalty on the ground that death by electrocution was unconstitutional under both the federal constitution and the Nebraska state constitution. Filing 13-14 at 46–48 (citing the Eighth and Fourteenth Amendments to the United States Constitution and Article IX of the Nebraska Constitution). Petitioner also filed a motion to "prohibit and quash" further proceedings regarding an aggravation hearing or other proceedings relating to the death penalty on the ground that Nebraska's death penalty statutes were unconstitutional. Filing 13-14 at 50–68. The trial court denied these motions. Filing 13-15 at 96–107.

2. *Trial, Conviction, and Sentence*

Trial began on April 14, 2008. After approximately eleven days, the jury found the petitioner guilty of first-degree murder. Filing 13-15 at 37 (the jury finding petitioner guilty on April 25, 2008). The State pursued the death penalty, and the trial court set the matter for an aggravation hearing pursuant to Neb. Rev. Stat. § 29-2520. Filing 13-14 at 141. Petitioner's motion to discharge the jury for purposes of holding an "aggravation trial" was denied. Filing 13-14 at 135–36, 159–62. Pursuant to Neb. Rev. Stat. § 29-2532, Petitioner filed a motion to quash, seeking to preclude the aggravation hearing and sentencing proceedings. Filing 13-14 at 138–39. Petitioner also requested a directed verdict for a sentence of life in prison. Filing 13-14 at 138–39. Both

motions were denied. Filing 13-14 at 155–58. Petitioner also renewed his motion to declare Nebraska's death penalty statues unconstitutional, which was also denied. Filing 13-14 at 141–52.

The same jury reconvened on April 28, 2008, for the purpose of determining whether one or more statutory aggravating circumstances existed. Filing 13-26. The jury unanimously found that the State had proven two statutory aggravators in Neb. Rev. Stat. § 29-2523(1). Filing 13-26 at 123–24. That is, the jury unanimously found beyond a reasonable doubt that (1) "the defendant was previously convicted of another murder or a crime involving the use or threat of violence or has substantial prior history of serious assaultive or terrorizing criminal activity," and that (2) the "murder committed by the defendant was especially heinous, atrocious, cruel, or manifested exceptional depravity." Filing 13-26 at 123–24; Neb. Rev. Stat. § 29-2523(1)(a), (d).

A three-judge sentencing panel was named on April 30, 2008, pursuant to Neb. Rev. Stat. § 29-2521, for the purpose of considering mitigating or aggravating circumstances. Filing 13-15 at 68. The panel convened for a hearing on December 19, 2008, and on February 9, 2009, the panel sentenced Petitioner to death. Filing 13-15 at 124–52.

*3. Direct Appeal*

Petitioner filed an automatic direct appeal to the Nebraska Supreme Court, in which he assigned "two broad categories [of error]: issues relating to evidence at trial and issues arising out of the capital sentencing proceedings." Filing 13-1 at 6. Petitioner argued in his appeal that the trial court committed error in admitting the Propensity Evidence, abused its discretion when denying two mistrial requests, and committed further error when it denied his motion to exclude the jailhouse informer testimony in violation of Neb. Rev. Stat. § 29-1929 and his due process rights. Filing 13-6 at 13. The petitioner also alleged that the trial court "erred in denying [his] motion *in limine* regarding the state's use of DNA evidence." Filing 13-6 at 13. Petitioner also asserted *inter alia* a facial challenge to the constitutionality of the death sentence, as-applied

challenges to the applicability of the statutory aggravating circumstances, and argued that removing the determination of life or death from the jury was unconstitutional. Filing 13-6 at 13–16. Petitioner's additional challenges involved the sentencing panel's proportionality review. Filing 13-6 at 13–16.

The Nebraska Supreme Court affirmed the conviction and sentence on May 27, 2011. Filing 13-1. While the Nebraska Supreme Court concluded that the trial court erred in admitting the Propensity Evidence, the Nebraska Supreme Court found the error harmless because of Petitioner's statements to witnesses about the crime, the physical evidence, and other circumstantial evidence of his guilt. Filing 13-1 at 9. No merit was found in any of the remaining assigned errors. Filing 13-1 at 10–34. The United States Supreme Court denied Petitioner's writ of certiorari on October 27, 2011. Filing 13-2; Filing 13-4; Filing 13-8.

*4. The First Postconviction Motion*

Petitioner filed a *pro se* motion for postconviction relief (the *pro se* PCM) in state court on October 27, 2011. Filing 36-2; Filing 13-16 at 2–72. The *pro se* PCM raised *inter alia* claims of ineffective assistance of counsel during trial and in his direct appeal, claims alleging trial court error, and claims relating to evidentiary and capital sentencing issues already addressed on direct appeal. Filing 13-16 at 2–72. After the appointment of James Regan to represent Petitioner, Petitioner—through Regan—sought an extension to file a "verified motion for postconviction relief." Filing 13-16 at 94. However, three months later, Petitioner was *pro se* again and filed a significant amendment and exhibits to the *pro se* PCM to address issues that his counsel "refuse[d] to address." Filing 13-16 at 96–128. Nonetheless, on June 5, 2015, Regan filed an "Addendum" to the *pro se* PCM. Filing 13-16 at 132–34 (together, the Addendum and *pro se* PCM are referred to as the First PCM). This addendum "supplement[ed] and [made] more definite such claims of ineffective assistance of counsel that would require postconviction relief as requested and pursuant

to law." Filing 13-16 at 132–34. Petitioner—without counsel—in August 2015 filed letters with the trial court seeking to supplement the First PCM to address claims based on what he contended was newly discovered evidence. Filing 13-16 at 139–41.

After reviewing Petitioner's "self-drawn motions for postconviction relief" and Regan's addendum, the District Court of Douglas County, Nebraska, granted an evidentiary hearing on the issues of:

> whether he was denied effective assistance of counsel for the failure of his attorneys to competently explore the impact of the Defendant's mental illness and cognitive defects on the Defendant's competence to stand trial, or whether he was criminally insane at the time of the homicide of which he was convicted, as well as their failure to competently challenge the DNA evidence presented by the state at trial, including the alleged involvement of David Kofoed, as raised by the Defendant in this third postconviction motion.

Filing 13-16 at 166–68. The court also granted Petitioner's motion to amend his postconviction motion to add the claim of whether the death penalty procedure in Nebraska is constitutional in light of *Hurst v. Florida*, 577 U.S. 92 (2016). Filing 13-16 at 182–85. The trial court held an evidentiary hearing on March 3, 2021, on the issue of ineffective assistance of trial and direct appeal counsel. Filing 13-16 at 189–91. The court found the claims without merit, denied the motions, and found unavailing the argument that Nebraska's death penalty was rendered unconstitutional by *Hurst*. Filing 13-16 at 189–201. The only issue that Petitioner raised on appeal was whether the trial court erred in finding that Petitioner's trial counsel was not ineffective in challenging the DNA evidence. Filing 13-10 at 4. The Nebraska Supreme Court affirmed the order and issued the mandate on August 3, 2022. Filing 13-3; Filing 13-5. The habeas petition before the Court was then filed.

*5. Petitioner's Second State Court Postconviction Motion*

Petitioner filed a second successive postconviction motion (Second PCM) in state court on October 13, 2023. Filing 36-4. Petitioner raised seven claims of "ineffective assistance of

postconviction counsel for failing to raise . . . claims of ineffective assistance of trial counsel." Filing 36-4 at 5–9. The claims raised in the Second PCM generally correspond with the following claims asserted in the Petition: 2, 3.7, 3.8, 5, 6, 7, 11, and 12.

*6. Federal Habeas Proceedings*

Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 on July 21, 2023. Filing 1. State Respondent filed the state court record, Filing 12; Filing 13, an Answer, Filing 24, a brief in support, Filing 26 (sealed and unredacted); Filing 30 (redacted), and an Amended Answer, Filing 31. Petitioner filed a motion to stay and a brief in support, seeking to stay these proceedings and hold them in abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005). Petitioner argued that the state court should address his unexhausted claims and that the federal proceeding should therefore be stayed. Filing 36; Filing 37 at 6–7. This Court denied the motion to stay, concluding that "Petitioner's current and proposed attempts to exhaust any of the Unpresented Claims are futile, rendering all the claims in the Petition fully exhausted either via a full round of meritorious review in the Nebraska State Courts or via anticipatory procedural default." Filing 46 at 26 (Memorandum and Order). Petitioner filed a response to the answer, Filing 54, and State Respondent filed its reply, Filing 60.

*7. The Petition's Claims*

Petitioner raises fifteen claims and numerous subparts in the Petition. The claims include the following:

1. The admission of prejudicial evidence of Petitioner's other crimes, wrongs, or acts under Neb. Rev. Stat. § 27-404, and the prosecution's use of that evidence to argue propensity, violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments;
2. The highly inflammatory pretrial publicity was prejudicial, the trial court's denial of his request to change venue violated his Fifth, Sixth, Eighth, and Fourteenth Amendment

rights, and his trial counsel was ineffective in failing to adequately support his motion for change of venue;

3. The misleading DNA evidence presented to the jury violated Petitioner's rights under the Fifth and Fourteenth Amendments to the United States Constitution and *Brady v. Maryland* and his trial counsel was ineffective in challenging the presentation of DNA evidence;
4. The admission of testimony from jailhouse informants Clarence Dennis and Darryl Chambers violated Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and *Brady v. Maryland*;
5. The admission of testimony from jailhouse informants Clarence Dennis and Darryl Chambers violated Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and *Brady v. Maryland*;
6. Petitioner's Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to take reasonable steps to negotiate a sentence less than death including failing to diligently pursue a plea deal;
7. Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated by prosecutorial misconduct in closing statements and because trial counsel failed to object to the misconduct, ask for a curative instruction, or move for a mistrial;
8. Petitioner's trial was presided over by a biased judge in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;
9. State postconviction counsel was ineffective for failing to raise ineffective assistance of trial counsel claims in violation of Petitioner's rights under the Fifth and Fourteenth Amendments to the United States Constitution and *Martinez v. Ryan*;

10. Petitioner's death sentence relies on unconstitutionally vague statutory aggravating factors in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;
11. Petitioner is ineligible for the death penalty under the Eighth Amendment to the United States Constitution and *Atkins v. Virginia*;
12. Petitioner's severe mental illness makes him ineligible for a death sentence under the Eighth Amendment to the United States Constitution;
13. Nebraska's capital sentencing scheme, requiring a panel of judges to make the findings of fact necessary to impose a death sentence, is unconstitutional under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and *Hurst v Florida*;
14. The imposition of the death penalty on the basis of race violates the Eighth and Fourteenth Amendments to the United States Constitution; and
15. Petitioner's death sentence violates the Eighth Amendment to the United States Constitution's prohibition against cruel and unusual punishment.

Filing 1 at 1–8.

## II. LEGAL ANALYSIS

### A. The Key Legal Standards

#### *1. The Antiterrorism and Effective Death Penalty Act of 1996*

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under AEDPA, a state prisoner may seek a writ of habeas corpus in federal court if he is "in custody in violation of the Constitution or laws and treatises of the United States." 28 U.S.C. § 2254(a). Federal habeas relief is only permitted under AEDPA if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

"A decision is contrary to clearly established law if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,'" *Lafler v. Cooper*, 566 U.S. 156, 173 (2012) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)), or "if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (alteration added) (citing *Williams*, 529 U.S. at 405). "A state-court decision involves an unreasonable application of [the Supreme Court's] clearly established precedents if the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." *Id.* (alterations added) (citing *Williams*, 529 U.S. at 405). "Under § 2254(d)(1)'s unreasonable application clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Barton v. Stange*, 959 F.3d 867, 871 (8th Cir. 2020) (internal quotation marks omitted) (quoting *Cole v. Roper*, 783 F.3d 707, 710 (8th Cir. 2015), in turn quoting *Williams*, 529 U.S. at 411). "A state court's decision may be incorrect yet not unreasonable," and relief is granted "only if it is both." *Id.* (citing *Cole*, 783 F.3d at 710).

The United States Court of Appeals for the Eighth Circuit has stated the following with respect to the part of § 2254(d) relating to a state court's unreasonable determination of the facts:

> "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L.Ed.2d 836 (2007). "We may not characterize . . . state-court factual

> determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313–14, 135 S. Ct. 2269, 192 L.Ed.2d 356 (2015) (second alteration in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010)). Rather, we may "supersede the trial court's determination" only "[i]f reasonable minds reviewing the record [would not] disagree about the finding in question." *Id.* at 314, 135 S. Ct. 2269 (cleaned up); *see also Bahtuoh v. Smith*, 855 F.3d 868, 873 (8th Cir. 2017) ("A state court decision is based on an unreasonable determination of the facts only if the court's presumptively correct factual findings do not enjoy support in the record." (quotation omitted)). This is a high bar, but "'[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review,' and 'does not by definition preclude relief.'" *Brumfield*, 576 U.S. at 314, 135 S. Ct. 2269 (alteration in original) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003)).

*Donelson v. Steele*, 16 F.4th 559, 568 (8th Cir. 2021). Federal courts have also explained that "[w]hen reviewing whether a state court decision involves an 'unreasonable determination of the facts,' state court findings of 'basic, primary, or historical facts' are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence." *Phillips v. Brewer*, 764 F. Supp. 3d 837, 846 (E.D. Mo. 2025) (quoting *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007)). "Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable in light of the evidence of record." *Id.* (citing *Collier*, 485 F.3d at 423).

The standard for habeas relief under § 2254 is intentionally difficult to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be."). "It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the United States Supreme Court's] precedents. It goes no further." *Id.* at 102; *Donelson*, 16 F.4th at 567 ("AEDPA raises a high bar to relief: 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement.'" (quoting *Harrington*, 562 U.S. at 103)). Underlying this stringent standard are commitments to finality and federalism. *Sera v. Norris*, 400 F.3d at 542 (8th Cir. 2005) ("In the interests of finality and federalism, federal habeas courts are constrained by [AEDPA] to exercise only a 'limited and deferential review of underlying state court decisions.'" (quoting *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003))). Our federal system of government makes state courts "the principal forum for asserting constitutional challenges to state convictions." *Harrington*, 562 U.S. at 103; *Donelson*, 16 F.4th at 567 ("We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief is the remedy." (internal quotation marks omitted) (quoting *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013), in turn quoting *Harrington*, 562 U.S. at 102)). "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials." *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).

*2. Exhaustion and Procedural Default*

AEDPA provides that an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement, saying:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full

> opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "Thus, a 'full opportunity to resolve any constitutional issues' includes both a defendant's direct appeal as well as any postconviction proceedings permitted by the state." Filing 46 at 9 (Memorandum and Order on Motion to Stay). In Nebraska, the "full opportunity" on the direct appeal portion of the process ordinarily means that each § 2254 claim must have been presented to the trial court, and then in an appeal to either the Nebraska Supreme Court directly or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454–55 (8th Cir. 2005).

Only "those claims which the petitioner has presented to the state court in accordance with state procedural rules" are considered when reviewing a federal habeas petition. *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (internal quotation marks omitted) (quoting *Satter v. Leapley*, 977 F.2d 1259, 1261 (8th Cir. 1992)). "If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now." *Id.*

However, there are limited circumstances where federal courts excuse a petitioner's procedural default. The fact that procedural default can be excused is especially important to this case because the Court determined in its October 25, 2024, Memorandum and Order on Motion to Stay that "Petitioner's current and proposed attempts to exhaust any of the Unpresented Claims are futile, rendering all the claims in the Petition fully exhausted either via a full round of meritorious review in the Nebraska state courts or via anticipatory procedural default." Filing 46 at 26. Many of Petitioner's claims are procedurally defaulted. Thus, Judge Carson correctly

observed that the Court must now determine "if there are sufficient grounds to excuse any [of the] procedural[ly] default[ed] claims." *Ellis*, 2026 WL 123276, at *11.

A procedurally defaulted claim can be excused where a petitioner demonstrates "either cause for the default and actual prejudice as a result of the alleged violation of federal law, or, in rare cases, that the failure to consider the claim will result in a fundamental miscarriage of justice (such as where the petitioner is 'actually innocent')." *Lotter v. Houston*, 771 F. Supp. 2d 1074, 1096 (D. Neb. 2011) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991)); *see also Shinn v. Ramirez*, 596 U.S. 366, 379–80 (2022). "To establish cause, the prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Shinn*, 596 U.S. at 379 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *Coleman*, 501 U.S. at 753 (saying "[c]ause" is "something external to the petitioner, something that cannot fairly be attributed to him" (emphasis omitted)). "Then, to establish prejudice, the prisoner must show not merely a substantial federal claim, such that 'the errors at . . . trial created a *possibility* of prejudice,' but rather that the constitutional violation 'worked to his *actual* and substantial disadvantage.'" *Shinn*, 592 U.S. at 379–80 (internal quotation marks omitted) (quoting *Murray*, 477 U.S. at 494). Said differently, "[t]o demonstrate prejudice, [the petitioner] must show a reasonable probability that, but for the alleged constitutional violations, the result of the proceeding would have been different." *Hunt v. Houston*, 563 F.3d 695, 704 (8th Cir. 2009).

As Judge Carson correctly observed, "there exists other potential grounds that may overcome or excuse a procedural default, including claims arising under new constitutional law (*Heffernan v. Norris*, 48 F.3d 331, 333 (8th Cir. 1995)), claims asserting structural error (*United States v. Davila*, 569 U.S. 597, 611 (2013)), or claims for discovery violations under *Brady v. Maryland*, 373 U.S. 83 (1963)." *Ellis*, 2026 WL 123276, at *11. One other—notably narrow—

ground relates to the ineffective assistance of postconviction counsel. *See Martinez v. Ryan*, 566 U.S. 1, 17 (2012); *Trevino v. Thaler*, 569 U.S. 413 (2013). Describing this ground as narrow is important because the Supreme Court has clearly explained that no constitutional right to an attorney exists in postconviction proceedings. *Shinn*, 596 U.S. at 380. However, cause can be shown for the purpose of excusing a procedurally defaulted ineffective assistance of counsel claim where a "[s]tate's judicial system effectively forecloses direct review of trial-ineffective-assistance claims" and "requires prisoners to raise such claims for the first time during state collateral proceedings." *Id.* (first citing *Trevino*, 569 U.S. at 428; and then citing *Martinez*, 566 U.S. at 9). The Eighth Circuit has explained the pieces of this "*Martinez-Trevino* exception," saying that a petitioner can only maintain ineffective assistance of state postconviction counsel "as cause" for purposes of excusing a procedural default if he or she demonstrates:

> (1) the claim of ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the "initial" review proceeding with respect to the "ineffective-assistance-of-trial-counsel claim."

*Marcyniuk v. Payne*, 39 F.4th 988, 996 (8th Cir. 2022) (quoting *Harris v. Wallace*, 984 F.3d 641, 648 (8th Cir. 2021) (citation omitted)). "[T]o demonstrate that [the petitioner's] ineffective assistance of trial counsel claim is 'substantial,' [the petitioner] must show that it is at least debatable among jurists of reason whether [the petitioner's] trial counsel's performance was deficient and whether this deficient performance prejudiced him." *Id.* at 996–98 (first citing *Dorsey v. Vandergriff*, 30 F.4th 752, 757 (8th Cir. 2022); and then citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). This must be shown based on the state court record, as federal district courts cannot ordinarily hold evidentiary hearings or consider evidence beyond the state record to assess cause and prejudice. *See Shinn*, 596 U.S. at 389–90. To demonstrate the other ingredient required for excuse (*i.e.*, prejudice), the petitioner must show that the trial counsel's error "rendered [the

petitioner's] trial fundamentally unfair." *Marcyniuk*, 39 F.4th at 997 (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 300 (2017)). "A finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez*, 566 U.S. at 17.

3. *Ineffective Assistance of Counsel*

The United States Supreme Court established a two-pronged ineffective assistance of counsel standard in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the [the petitioner] must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "This 'performance prong' requires the petitioner to show that counsel's representation 'fell below an objective standard of reasonableness.'" *Erickson v. United States*, 3:16-CV-03015-KES, 2019 WL 3497299, at *3 (D.S.D. Aug. 1, 2019) (quoting *Strickland*, 466 U.S. at 688). "To show deficiency, the petitioner must show 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *Id.* (citation modified) (quoting *Strickland*, 466 U.S. at 687). "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. When reviewing the totality of the circumstances, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690.

"Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.* at 687. Under the "prejudice prong," a petitioner must "show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the petitioner must demonstrate "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

"Surmounting *Strickland*'s high bar is never an easy task." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). However, as Judge Carson correctly observed, "[e]stablishing that a state court's application of *Strickland* was unreasonable under AEDPA is all the more difficult." *Ellis*, 2026 WL 123276, at *13. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential.'" *Harrington*, 562 U.S. at 105 (first quoting *Strickland*, 466 U.S. at 689; and then citing *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). "[W]hen the two apply in tandem, review is 'doubly' so." *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)) The Supreme Court has explained that the deference owed to state courts is especially strong in cases involving ineffective assistance of counsel claims, saying:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles*, 556 U.S. at 123 (citation modified) (first quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); and then citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations")).

**B. Petitioner's General Objections**

Petitioner makes three general objections to Judge Carson's Findings and Recommendation. Petitioner's first general objection is that AEDPA unconstitutionally limits the powers of this Court. Filing 69 at 5–7. Petitioner's second general objection is that his second postconviction motion remains pending in Nebraska state court and that any unexhausted or procedurally defaulted claims may receive merits consideration in Nebraska state courts. Filing 69 at 7–8. Petitioner's final general objection is that he is entitled to discovery to develop material facts supporting his claims for relief. Filing 69 at 8–10. The Court has conducted a *de novo* review of Petitioner's general objections, and for the reasons stated below, concludes they all lack merit. Petitioner's general objections are overruled.

*1. Petitioner's First General Objection: AEDPA Unconstitutionally Limits the Powers of This Court*

Petitioner's Brief in Response to Respondent's Answer (Petitioner's Response), Filing 54, argues *inter alia* that the deference afforded to state court decisions under AEDPA runs afoul of the Supreme Court's ruling in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Filing 54 at 3–5. Judge Carson found this argument unavailing, saying "Ellis mixes apples and oranges. The Court's holding in *Loper Bright* merely eliminated deference to agency interpretations of statutes and concerns administrative law, not criminal law. AEDPA on the other hand provides for deference to state court decisions, not agencies, and to Supreme Court precedent, not agency interpretation." *Ellis*, 2026 WL 123276, at *10 n.8 (citing cases). Petitioner objects, saying "[t]he Findings and Recommendation's cursory treatment of the constitutionality of AEDPA deference deserves another look." Filing 69 at 5. Petitioner's argument that AEDPA unconstitutionally limits the powers of the Court is unavailing.

The Court is persuaded by the reasoning of the United States Court of Appeals for the Sixth Circuit in *Sanders v. Plappert*. 168 F.4th 837, 853 (6th Cir. 2026). There, the Sixth Circuit explained that "AEDPA does not mandate deference to a state court's constitutional determination; it just states that a court cannot grant habeas relief merely because its own independent interpretation differs." *Sanders*, 168 F.4th at 853.

> AEDPA does not mandate that federal courts accept a state court's federal constitutional interpretation as their own, it only prevents those federal courts from intervening when the state courts make reasonable decisions as opposed to *Chevron*, which forced a court to defer to an agency decision so long as it is reasonable before even being allowed to engage in its own independent statutory analysis.

*Id.* (citation omitted); *see also Piper v. Jackley*, 5:20-CV-05074-RAL, 2025 WL 889374, at *18 (D.S.D. Mar. 21, 2025) ("AEDPA limits habeas relief but not the judiciary's ability to independently interpret the law."). The Court finds the Sixth Circuit's reasoning persuasive; AEDPA does not require the Court to unconstitutionally abandon its Article III duty to say what the law is. Therefore, Petitioner's first general objection is overruled.

2. *Petitioner's Second General Objection: The Petitioner's Second Postconviction Motion Remains Pending, and Any Unexhausted or Procedurally Defaulted Claims May Receive Merits Consideration in Nebraska State Courts*

Petitioner asserts that he has a second successive postconviction motion pending in state court and that "[a] grant of relief on any of [his] claims in state court impacts this Court's analysis and consideration of his claims in this forum. Accordingly, any decision on [Petitioner's] claims at this point would be premature." Filing 69 at 8. Judge Carson stated in his Findings and Recommendation that, "[i]n addition to his many claims, [Petitioner] seeks to revisit other issues already addressed and rejected by the district court in its Memorandum and Order denying a stay." *Ellis*, 2026 WL 123276, at *36. Judge Carson stated that this request "lack[s] merit and should be denied." *Ellis*, 2026 WL 123276, at *37. Judge Carson explained,

> To the extent [Petitioner's] motion regarding the stay is one to alter or amend under Fed. R. Civ. P. 59(e), he is out of time, and notably Ellis did not timely seek other relief or seek to appeal the district court's order. To the extent the motion falls under Fed. R. Civ. P. 60(b), he has not shown mistake, inadvertence, surprise, or excusable neglect nor has he established any newly discovered evidence, fraud, or other reasons justifying relief. The rules are not designed to provide an avenue for a disappointed party to relitigate a matter previously decided by the court.

*Ellis*, 2026 WL 123276, at *37 (citing *United States of America v. Metropolitan St. Louis Sewer District*, 440 F.3d 930, 933-34 (8th Cir. 2006)).

The Court stands by its October 25, 2024, Memorandum and Order on Motion to Stay, which concluded that "all the claims in the Petition [are] fully exhausted either via a full round of meritorious review in the Nebraska state courts or via anticipatory procedural default." Filing 46 at 26. The Court further agrees with Judge Carson that, to the extent the Petition seeks an amendment or alteration to the Court's Memorandum and Order under Federal Rule of Civil Procedure 59(e), he failed to bring a timely motion complying with the Court's local rules. Federal Rule of Civil Procedure 59(e); NECivR 7.1. To the extent Petitioner seeks relief from the Court's order under Federal Rule of Civil Procedure 60(b), he failed to bring a motion complying with the Court's local rules and also fails to show "mistake, inadvertence, surprise, or excusable neglect," or any of the other grounds that could provide grounds for relief. NECivR 7.1; Fed. R. Civ. P. 60(b). Notably, Petitioner does not make any argument in his Objections that he qualifies for relief under the Federal Rules of Civil Procedure. Filing 69 at 4–5. Accordingly, the Court overrules Petitioner's second general objection.

*3. Petitioner's Third General Objection: Petitioner is Entitled to Discovery to Develop Material Facts Supporting His Claims for Relief*

Petitioner asserts in his Response that he is entitled to discovery to develop material facts supporting and demonstrating his claims for relief. Filing 54 at 8—10. Judge Carson states in his Findings and Recommendation that this request, too, is not a motion brought in compliance with

the Court's local rules. *Ellis*, 2026 WL 123276, at *36–37. Additionally, Judge Carson found that "[Petitioner] is also not entitled to an evidentiary hearing for many of the same reasons already noted herein, including that none of his defaulted claims are substantial or have merit. [Petitioner] also cannot satisfy the strict standards sufficient to justify an evidentiary hearing in federal court under AEDPA, 28 U.S.C. § 2254(e)(2)." *Ellis*, 2026 WL 123276, at *37.

Petitioner's request for discovery is not properly before the Court on a motion. NECivR 7.1. That the Court's Order on Initial Review and Progression of Case did not specifically solicit, invite, or encourage the request for discovery to be presented as a motion is inapposite to the question of whether the request is properly before the Court now; the request for discovery is not. NECivR 7.1; Filing 69 at 8 ("The Findings and Recommendation faulted [Petitioner] for not requesting discovery. However, no such filing was contemplated by this Court.").

Additionally, Petitioner has not shown good cause for discovery and is therefore not entitled to it. Under § 2254,

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "So, if a claim 'was adjudicated on the merits in State court proceedings,' a petitioner must overcome § 2254(d)'s bar on relief." *Shockley v. Crews*, 696 F. Supp. 3d 589, 624 (E.D. Mo. 2023). Habeas petitioners cannot use evidence beyond the state-court record to overcome the bar. *Id.*; *Cullen*, 563 U.S. at 181–83 ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. . . .

It would be strange to ask a federal court to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court."); *Shoop v. Twyford*, 596 U.S. 811, 819 (2022) ("AEDPA also restricts the ability of a federal habeas court to develop and consider new evidence. Review of factual determinations under § 2254(d)(2) is expressly limited to 'the evidence presented in the State court proceeding.'" (citation omitted)). Those claims asserted in the Petition that were adjudicated on the merits in state court therefore cannot underlie Petitioner's request for discovery.

AEDPA also sets strict limits on developing the factual basis through additional discovery of claims not adjudicated in state court. Section 2254(e)(2) provides,

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). In very limited circumstances, however, § 2254(e)(2)'s stringent requirements may not apply, as § 2254(e)(2)'s limitations "apply to cases where the petitioner 'failed to develop the factual basis of a claim.'" *Shockley*, 696 F. Supp. 3d at 625 (citing 28 U.S.C. § 2254(e)(2)). "Here, 'fail[] to develop' means a 'lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.'" *Id.* (quoting *Williams*, 529 U.S. at 431). "So whether § 2254(e)(2) applies to a petitioner does not depend on 'whether the facts [that the

petitioner now wants to introduce] could have been discovered but instead [on] whether the [petitioner] was diligent in his efforts [to discover and present those facts in state court].'" *Id.* (quoting *Marcyniuk*, 39 F.4th at 999, in turn quoting *Williams*, 529 U.S. at 435). "A petitioner who 'fails to demonstrate either that the requirements of § 2254(e)(2) do not apply to him [because he diligently attempted to develop the factual record] or that he can satisfy those requirements . . . is not entitled to discovery.'" *Id.* (alterations in original) (quoting *Marcyniuk*, 39 F.4th at 1000).

As shown in the Court's analysis below, Petitioner has not shown that he meets the strict requirements of § 2254(e)(2) with respect to any claim. Moreover, Petitioner does not argue anywhere in his Objections that § 2254(e)(2) does not apply to him for any reason. *See* Filing 69. Instead, Petitioner asserts *inter alia* that good cause for additional discovery exists because he has asserted specific allegations that give the Court reason to believe that, if the facts are fully developed, he may be able to demonstrate he is entitled to relief. Filing 69 at 8. As shown in the analysis that follows, Petitioner has not done so. Moreover, "[l]ike the decision to grant habeas relief itself, the decision to permit new evidence must be informed by principles of comity and finality that govern every federal habeas case." *Shinn*, 596 U.S. at 381–82. Taken with the overwhelming evidence marshaled against Petitioner in state court and the fact that the Court finds that all of Petitioner's claims lack merit, these principles favor overruling Petitioner's objection requesting additional discovery.

### C. Petitioner's Specific Objections

In addition to Petitioner's general objections, Petitioner asserts specific objections to Judge Carson's recommended dispositions as to most of the claims (and certain subclaims) asserted in the Petition. The Court has conducted a *de novo* review of Petitioner's specific objections, and for the reasons stated below, concludes they all lack merit. Petitioner's specific objections are overruled.

*1. Petitioner's First Specific Objection: Propensity Evidence*

The Petition's first claim for relief asserts that the admission of prejudicial evidence of Petitioner's other crimes, wrongs, or acts under Nebraska law, and the prosecution's use of that evidence to argue propensity, violated Petitioner's constitutional rights. Filing 1 at 16. The Petition asserts that the Nebraska Supreme Court's conclusion that the admission of inadmissible propensity evidence at trial was not prejudicial and harmless error was contrary to and involved an unreasonable application of clearly established federal law. Filing 1 at 18. Judge Carson found that "[t]he state court did not act contrary to, nor did it engage, in an unreasonable application of clearly established federal law" and recommended that Claim 1 be denied. *Ellis*, 2026 WL 123276, at *16. Petitioner objects to Judge Carson's recommended disposition as to Claim 1. Filing 69 at 10–15.

The prosecution's case at trial used evidence that Petitioner sexually abused his two stepdaughters and that Petitioner fathered a child with both. Filing 13-23 at 11–56. The prosecution's opening statement provided *inter alia* that "[Petitioner's] intentions with 12-year-old Amber Harris are the same as his intentions with then 14-year-old Ashia and 12-year-old Aquanta Birge, and that's to sexually assault them." Filing 13-20 at 226. The prosecution's closing argument also noted *inter alia*,

> [W]hat do Ashia and Aquanta Birge tell you about? Ashia Birge says that she's 14 years old, and that she's repeatedly sexually assaulted by the defendant . . . until she has a child by him.
>
> Aquanta Birge tells you she's 12 years old when it starts with her, and that she is repeatedly sexually assaulted by the defendant . . . .

Filing 13-25 at 150–51. Petitioner also complains of evidence relating to his two stepdaughters elicited on direct examination, saying that the way such evidence was elicited was "highly

inflammatory, and served no purpose other than to prejudice the jury." Filing 1 at 22 (citing Filing 13-23).

The Supreme Court considered whether a constitutional trial error merits federal habeas relief in *Brecht v. Abrahamson*. 507 U.S. at 637–38. The test the Supreme Court adopted is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 766 (1946)); *Fry v. Pliler*, 551 U.S. 112, 121 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* . . . ."). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

The propensity evidence at issue did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637–38 (internal quotation marks omitted) (quoting *Kotteakos*, 328 U.S. at 766); *Pliler*, 551 U.S. at 121 ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht* . . . ."). The Nebraska Supreme Court provided a thorough explanation as to why this is so:

> We recognize that the admission of other acts evidence, by its nature, is usually prejudicial to the defendant. But this is the rare instance in which it was not. For one thing, Shaffer testified, without objection, that Ellis admitted molesting young girls and impregnating his stepdaughter. And more fundamentally, Ellis was inescapably tied to Amber's killing through DNA evidence that, as we will explain below, was admissible and persuasive, and physical evidence that proved to be consistent with Ellis' careless statements that had already been reported to investigators. There was no innocent explanation for how Ellis' DNA came to be on Amber's bloody clothing. Nor is there any innocent explanation for how several witnesses came forward with information before Amber's body or Ellis' DNA on

> her clothing had been discovered linking Ellis to the killing—some of whom even accurately described Amber's cause of death and the possible location of her body. This evidence can only be explained by the conclusion that Ellis was the killer.
>
> Given Ellis' statements, the physical evidence, and the other circumstantial evidence, we have no doubt that any reasonable trier of fact would have found Ellis guilty of the charge against him. In particular, no reasonable trier of fact could overlook the testimony of Dennis, Smith, and Shaffer, each of whom was interviewed several weeks before Ellis' DNA was identified on Amber's clothing and at least a month before Amber's body was found in Hummel Park. Each witness found Ellis' interest in the case suspicious, and they all described details of the case that they had no way of knowing unless they heard them from the person who killed Amber. Therefore, although we find merit to Ellis' first assignment of error, we find that the error was not prejudicial to Ellis.

Filing 13-1 at 9–10 (internal citations omitted); *see also* Filing 13-1 at 34 ("Although we find that Ellis' argument regarding evidence admitted pursuant to rule 404(2) has merit, we find that the error was harmless; the physical evidence, and statements Ellis was reported to have made before the physical evidence connected him to the crime, established his guilt beyond any reasonable doubt.").

Judge Carson also thoroughly cataloged the voluminous evidence marshaled against Petitioner at trial:

> This evidence included, but was not limited to, testimony from witnesses detailing their discussions with Ellis concerning Amber's death and the location of her body. Ellis' odd infatuation with Amber's case before her body was even found and jailhouse calls in which Ellis indicated he needed to get out so he could find some stuff. Ellis' specific requests to corrections officers as to whether blood or semen left outside would be contaminated by the elements. Then there was the physical evidence discovered, including DNA evidence connecting Ellis to Amber's clothing, in particular DNA evidence found at "Area H2" and the random probability statistics associated with that finding. The Propensity Evidence did nothing to substantiate or invalidate the separate testimony of Dennis, Smith, and Shaffer or DNA experts Kaye Shepard, Dr. James Wisecarver, or CODIS (combined DNA index system) administrator Christine Moraczewski, or any other individual who testified at Ellis' trial. Nor did the admission of the Propensity Evidence make it any less probable that 11 markers of the DNA found in the DNA profile from Area H2 matched Ellis. The Propensity Evidence likely did little other than to confirm what the jury already determined from the other evidence presented—that Ellis was guilty of killing Amber.

*Ellis*, 2026 WL 123276, at *15.

The Propensity Evidence likely injured Petitioner's case. However, the volume and weight of the other evidence put against Petitioner prompts the inescapable conclusion that he was guilty. *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (saying that review for harmless error requires a court to consider "not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand"); *Romano v. Oklahoma*, 512 U.S. 1, 12 (1994) (saying whether errors in admission of evidence rise to a federal due process violation depends on "examination of the entire proceedings"). In other words, the other evidence precludes the Court from having any doubt—much less a grave doubt—that a trial error had a substantial effect or influence in determining the jury's verdict.[1] *See Brecht*, 507 U.S. at 637–38.

The propensity evidence at issue did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637–38 (internal quotation marks omitted) (quoting *Kotteakos*, 328 U.S. at 776); *Pliler*, 551 U.S. at 121 ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* . . . ."). The Court concludes, like Judge Carson, that the state court did not act contrary to clearly established federal law nor did the state court engage in an unreasonable application of clearly established federal law. The Court accordingly overrules Petitioner's objection as to his first claim.

[1] Petitioner argues that this is also one of the "unusual case[s], [where] a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict." Filing 69 at 14 (quoting *Brecht*, 507 U.S. at 638 n.9). Judge Carson correctly observed that this comment in *Brecht* "appears to be *dicta*" and "has no bearing because this is not that type of case." *Ellis*, 2026 WL 2026 WL 123276, at *16. The admission of the propensity evidence cannot be said to have "so infect[ed] the integrity of the proceeding as to warrant the grant of habeas relief," as the prosecution's use of such evidence was comparatively limited and less probative than the totality of the other evidence introduced over the course of the eleven-day trial. *See Brecht*, 507 U.S. at 638 n.9.

*2. Petitioner's Second Specific Objection: Pretrial Publicity and Related Ineffective Assistance of Counsel*

Petitioner alleges for his second claim that "[t]he highly inflammatory pretrial publicity prejudiced [Petitioner]. The failure by the trial court to order a change of venue violated [Petitioner's] rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Trial counsel rendered ineffective assistance of counsel when they failed to support the motion." Filing 1 at 31. Judge Carson recommended that the claim be denied because it "is procedurally defaulted without excuse." *Ellis*, 2026 WL 123276, at *16; Filing 46. Petitioner objects to Judge Carson's recommended disposition. Filing 69 at 15–20. Petitioner cites to social media posts and a news story from 2025 and 2026 as evidence that the "case is still very much in the public eye" and asserts that "[t]he Findings and Recommendation's refusal to acknowledge the impact that the pretrial publicity had on the jury pool is wrong." Filing 69 at 16–17. Petitioner also maintains that "the jurors selected for [Petitioner's] panel were inundated with prejudicial pretrial publicity." Filing 69 at 17. Petitioner concludes that "cause and prejudice exist to excuse any procedural default of Claim 2." Filing 69 at 20.

After conducting a *de novo* review of the claim, the Court finds that the claim is procedurally defaulted and that the default cannot be excused. As mentioned elsewhere, the Court can only consider "those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Abdullah*, 75 F.3d at 411 (internal quotation marks omitted) (quoting *Satter*, 977 F.2d at 1261). Procedural default is only excused where the petitioner can demonstrate cause for the default and actual prejudice. *See Coleman*, 501 U.S. 722; *Shinn*, 596 U.S. at 371, 379. "Cause" is "something external to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753 (emphasis omitted). Petitioner concedes that he did not raise the claim in his direct appeal or in the First PCM. Filing 54 at 20. The evidence relating to pretrial

publicity was available to Petitioner long before his direct appeal. For this reason, Petitioner cannot show cause, as Petitioner must show an external cause to excuse default and has not done so. *See Coleman*, 501 U.S. at 753.

Petitioner has also failed to meet the strict requirements of AEDPA for purposes of receiving additional and further discovery and/or an evidentiary hearing with respect to this claim. Section 2254(e)(2) requires the claim to rely on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or "a factual predicate that could not have been previously discovered through the exercise of due diligence" in order to pursue further discovery. *See* 28 U.S.C. § 2254(e)(2). Petitioner does not make either showing with respect to his second specific claim. *See generally* Filing 1 at 31–46; Filing 69 at 15–20.

Finally, with respect to the part of the claim based in ineffective assistance of counsel in failing to adequately support the motion for change of venue, Petitioner has failed to show that his claim is "substantial." *Marcyniuk*, 39 F.4th at 996 (saying the claim of ineffective assistance of trial counsel must be "substantial" and that a federal habeas petitioner "must show that it is at least debatable among jurists of reason whether [trial counsel's] performance prejudiced him"). Therefore, the "narrow" *Martinez-Trevino* exception to procedural default on ineffective assistance of counsel claims does not apply. *Shinn*, 596 U.S. at 380 (calling the exception "narrow"); *Marcyniuk*, 39 F.4th at 996. Petitioner's objection asserts that "trial counsel's ineffectiveness in challenging the venire was objectively unreasonable, resulted in a breakdown of the adversarial process, and prejudiced [Petitioner]." Filing 69 at 20. However, "'[j]ust because . . . there has been widespread or even adverse publicity is not in itself grounds to grant a change of venue.'" *Johnson v. Nix*, 763 F.2d 344, 347 (8th Cir. 1985) (quoting *United States v. McNally*, 485

U.S. 398, 403 (8th Cir. 1973)). The Supreme Court observed that considerations such as the size and characteristics of the community in which the crime occurred, whether the pretrial publicity "contained no confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight," and the time between the trial and the crime can inform whether pretrial publicity led to an unfair trial that prejudiced the defendant such that the venue should have changed. *Id.* at 382, 381–85. The Supreme Court did conclude that there was a presumption of prejudice in *Irvin v. Dowd*. 366 U.S. 717 (1961). There, almost ninety percent of the venire members expressed an opinion as to the defendant's guilt, and eight of the twelve jurors had an opinion—prior to the beginning of trial—of whether the defendant was guilty. *Irvin*, 366 U.S. at 727–28 (1961).

Here, Petitioner has failed to show a substantial claim. As observed by Judge Carson, Douglas County, Nebraska, is the most populous and diverse county in the state. *Ellis*, 2026 WL 123276, at *17 (citing Nebraska state population and census data by county); *Skilling*, 561 U.S. at 382 ("First, we have emphasized in prior decisions the size and characteristics of the community in which the crime occurred. In *Rideau*, for example, we noted that the murder was committed in a parish of only 150,000 residents. Houston, in contrast, is the fourth most populous city in the Nation . . . ."). Much of the information that Petitioner contends was prejudicial was also factual in nature. Filing 60 at 10 (citing Filing 13-28) (referring to reports on the petitioner's criminal history, the DNA evidence, and the victim's bookbag); *see Murphy v. Florida*, 421 U.S. 794, 802 (1975) (finding no prejudice in part because the newspaper articles were "largely factual in nature" and published about seven months before a jury was selected). The trial also took place over two years after the victim's disappearance and almost two years after the victim's body was discovered. Filing 13-1 at 5–6; Filing 13-15 at 37. Most pretrial publicity that Petitioner cites in the Petition

was making the rounds in Douglas County in the years prior to the trial. Even considering Petitioner's assertion that "[p]retrial publicity picked up on the days leading up to jury selection," Petitioner does not explain how that pretrial publicity led to an unfair trial. Filing 1 at 34 (failing to explain the nature of the publicity, where it was aired, and who saw it); *Johnson*, 763 F.2d at 347 ("'Just because . . . there has been widespread or even adverse publicity is not in itself grounds to grant a change of venue.'" (quoting *McNally*, 485 U.S. at 403)). Additionally, the record shows that a much lower percentage of prospective jurors had an opinion on Petitioner's guilt than in *Irvin*, and none of the fourteen selected jurors had formed an opinion as to the defendant's guilt. *Irvin*, 366 U.S. at 727–28 (saying almost ninety percent of the venire members expressed an opinion as to the defendant's guilt and eight of the twelve jurors had an opinion—prior to the beginning of trial—of whether the defendant was guilty); Filing 13-18 at 62–248; Filing 13-19; Filing 13-20 at 1–144. Petitioner disputes that none of the fourteen selected jurors formed an opinion as to the defendant's guilt in his Objections, saying such a conclusion is "shaky . . . at best." Filing 69 at 17. However, Petitioner only cites to parts of the record showing the jurors knew about the case. Filing 69 at 17–18; *see Johnson*, 763 F.2d at 347 ("'Just because . . . there has been widespread or even adverse publicity is not in itself grounds to grant a change of venue.'" (quoting *McNally*, 485 F.2d at 403). Additionally, the jurors did not report knowledge about pretrial publicity relating to Petitioner's sexual abuse of his stepdaughters. Filing 13-20 at 195–96 (list of jurors); Filing 13-18 at 127–28, 138–39, 187, 200, 220; Filing 13-19 at 28–29, 48, 155, 196, 208; Filing 13-20 at 25, 143–44, 182 (*voir dire* responses). This Court's review concludes that Judge Carson's conclusion is correct. The trial court did not commit error in denying a motion for change of venue, and Petitioner's trial counsel was not ineffective for failing to more comprehensively raise the pretrial publicity and venue issues further. The *Martinez-Trevino* exception does not

apply because Petitioner's claim is not substantial. Petitioner's objections relating to Claim 2 are overruled.

*3. Petitioner's Third Specific Objection: DNA Evidence and Related Ineffective Assistance of Counsel*

Petitioner's third claim for relief broadly states,

> The misleading DNA evidence presented to the jury violated [Petitioner's] rights under the Fifth and Fourteenth Amendments to the United States Constitution and *Brady v. Maryland*. Trial counsel rendered ineffective assistance of counsel in challenging the presentation of DNA evidence in violation of [Petitioner's] rights under the Sixth and Fourteenth Amendments to the United States Constitution.

Filing 1 at 38. Petitioner divides this claim into eight subparts. Filing 1 at 38–59. Judge Carson found no merit in Claim 3 or any of its subparts. Petitioner only "specifically objects to the asserted grounds for dismissal of Claim 3.2, Claim 3.7, and Claim 3.8." Filing 69 at 20.

The Court begins with Claim 3.2. Claim 3.2 asserts that "[t]he prosecution knowingly presented substantially misleading and inadmissible evidence that CODIS [(Combined DNA Index System)] found a 'match' between Area H2 and [Petitioner] and violated *Brady v. Maryland* by withholding discoverable CODIS information." Filing 1 at 52. Judge Carson explained that "[Petitioner] does not dispute that claims 3.1 to 3.6 were not raised on direct appeal, but he asserts there is cause and prejudice to excuse any procedural default." *Ellis*, 2026 WL 123276, at *18. Petitioner does not contest that the claims, including Claim 3.2, were procedurally defaulted in his Objections. Filing 69 at 20–24. Instead, "[Petitioner] maintains that there is cause and prejudice to excuse any procedural default of the *Brady* component of Claim 3.2." Filing 69 at 21.

"Under Brady, '[t]he government has an obligation to disclose evidence that is favorable to the accused and material to either guilt or punishment.'" *United States v. Baez*, 983 F.3d 1029, 1044 (8th Cir. 2020) (quoting *United States v. Ladoucer*, 573 F.3d 628, 636 (8th Cir. 2009)). *Brady* claims "provide their own cause and prejudice" to overcome procedural default "if the material in

question was not discovered until after the deadline for presenting the claim to the state courts." *Hall v. Luebbers*, 296 F.3d 685, 699 (8th Cir. 2002). Cause is shown by the suppression of the evidence by state action "either willfully or inadvertently." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Prejudice is shown when the suppressed evidence is "material," meaning there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Banks v. Dretke*, 540 U.S. 668, 671 (2004); *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Petitioner does not contest Judge Carson's finding that the alleged deficiencies were known, or should have been known, at the time of discovery and well before trial in his Objections. *See* Filing 69 at 20–21. However, *Brady* claims only provide their own cause and prejudice "if the material in question was not discovered until after the deadline for presenting the claim to the state courts." *Hall*, 296 F.3d at 699. Therefore, the claim remains procedurally defaulted, as it was not raised on direct appeal or in the First PCM. Second, Petitioner fails to otherwise show prejudice. Even if a separate statistical analysis for the CODIS DNA profile was created, or should have been disclosed, Petitioner fails to identify any inaccurate information on the Match Report or that additional documentation would have undermined the DNA match results. Additionally, the Nebraska Supreme Court explained that the probability evidence "strongly suggested that [Petitioner's] DNA was likely on Harris' jeans." Filing 13-3 at 16. Thus, "[c]onsidering this with other circumstantial evidence that [Petitioner] killed Harris," the Nebraska Supreme Court found "there [was] not a substantial likelihood that the outcome would have been different had the probability statistic's relative strength been more overtly pointed out to the jury." Filing 13-3 at 16. Again, prejudice is shown when there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *See Banks*, 540

U.S. at 671; *Bagley*, 473 U.S. at 682. The Petition and Objections do not attempt to explain that there would have been a "probability" that the result of the proceeding would have been different. *See Banks*, 540 U.S. at 671; *Bagley*, 473 U.S. at 682. Petitioner therefore cannot demonstrate prejudice as to Claim 3.2, and the objection is overruled.

Claim 3.7 is the next subpart that Petitioner objects to. In Claim 3.7, Petitioner asserts that "[t]rial counsel failed to adequately object to and challenge the misleading and inadmissible DNA evidence." Filing 1 at 62 (emphasis omitted). Petitioner asserts that "trial counsel did not object to the prosecution's repeated elicitation of expert testimony that [Petitioner] was not excluded as a contributor to the DNA evidence at Area H on Harris' jeans." Filing 1 at 62. Petitioner also asserts that "[n]or did trial counsel object to the CODIS 'match' testimony." Filing 1 at 62. According to Petitioner, "Trial counsels' failure to object and correct the experts' misleading testimony and the prosecution's misleading DNA arguments fell below an objective standard of reasonableness for capital defense counsel," and that Petitioner was "prejudiced by the ineffectiveness . . . because there was a reasonable probability that if counsel had performed adequately, the result would have been different." Filing 1 at 64. Judge Carson found that Claim 3.7 was not substantial claim for purposes of the *Martinez-Trevino* exception to procedural default. *Ellis*, 2026 WL 123276, at *19.

As acknowledged by Petitioner, this Court previously found that Claim 3.7 was defaulted. Filing 69 at 24 (citing Filing 46). Petitioner nonetheless asserts in his objection that cause and prejudice exist to excuse the procedural default. Petitioner first argues that "Claim 3.7 is substantial and 'has some merit' because a basic obligation of defense counsel is to know the admissibility rules for evidence, particularly adverse evidence. Nebraska's prohibition on admitting DNA evidence without statistical evidence to explain the weight of the evidence could have been used

as the basis to object to DNA evidence and testimony." Filing 69 at 24–25 (citing *State v. Carter*, 524 N.W.2d 763, 783 (Neb. 1994)).

The Nebraska Supreme Court concluded in *State v. Wood* that the presence of male DNA in a case involving an alleged sexual assault of a female victim is probative and admissible even if the DNA is of insufficient quantity or quality to obtain a statistical profile. 966 N.W.2d 825, 856–58 (Neb. 2021). In that case, the Nebraska Supreme Court found that, because such testimony is admissible, defense counsel was not deficient at trial for failing to object to it. *Wood*, 966 N.W.2d at 858 ("Because the testimony concerning the presence of male DNA on the external vaginal swabs was admissible, defense counsel was not deficient at trial for failing to object to it."). Petitioner asserts that the case is "inapplicable" because it was issued after Petitioner's trial. Filing 69 at 25. In *Wood*, the Nebraska Supreme Court did not supersede any state evidentiary rule but merely distinguished the case from a prior case, *State v. Johnson*, that the petitioner in *Wood* argued precluded the admission of DNA evidence. *Wood*, 966 N.W.2d at 857 ("Here, the biologist's testimony that male DNA was present on the external vaginal swabs taken during the physical examination of the victim is not analogous to the evidence found in *Johnson* to be lacking in probative value." (citing *Johnson*, 862 N.W.2d 757 (Neb. 2015))). However, even if the trial court relied on inapplicable law at the time of Petitioner's trial, Petitioner would not receive the benefit of such law on collateral review. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) ("Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. As we have noted, it was the premise of our grant in this case that *Perry* was correctly decided, *i.e.,* that respondent was not entitled to an objection based on 'double counting.' Respondent therefore suffered no prejudice from his counsel's deficient performance."). To demonstrate prejudice, Petitioner must

show that his trial counsel's error "rendered his trial 'fundamentally unfair.'" *Marcyniuk*, 39 F.4th at 996 (citing *Weaver*, 582 U.S. at 300). Petitioner has not done that on the ground that his counsel did not object to the DNA evidence given that, under Nebraska law, the presence of male DNA in a case involving an alleged sexual assault of a female victim is probative and admissible even if the DNA cannot provide a statistical profile. *Wood*, 966 N.W.2d at 856–58.

Petitioner also argues that *Wood* is inapplicable because *Wood* "only allows the admission of the fact that male DNA was present—in [Petitioner's] trial, the State was allowed to present evidence to explain away why [Petitioner] was not a DNA match, such as a limitation in the DNA test results that prohibited the experts from reaching conclusive statistics." Filing 69 at 25. Petitioner asserts that "the only conclusion the jury could have drawn from the evidence was that [Petitioner] had handled the jeans at Area H." Filing 69 at 25. Petitioner cites to no authority saying that the State was precluded from introducing other evidence as to why Petitioner was not a DNA match. However, Petitioner's conclusion is also not supported by the record, as correctly noted by Judge Carson, because the testimony that Petitioner "could not be excluded as a contributor because there was not enough of [Petitioner's] type, alleles, or markers to run conclusive statistics" is "far from [Petitioner's] assertion that 'the only conclusion the jury could have drawn from the evidence' was that [Petitioner] was the individual who handled Amber's clothing." *Ellis*, 2026 WL 123276, at *20. It is worth noting that a successful *Martinez-Trevino* argument must show that the ineffective assistance of counsel claim has "some merit," *Martinez*, 566 U.S. at 14, and the petitioner must also show that the counsel's allegedly deficient performance prejudiced him *Marcyniuk*, 39 F.4th at 996. As explained by the Nebraska Supreme Court, however, Petitioner's statements and other circumstantial evidence contributed significantly to the conclusion that there is no "reasonable probability" that the proceeding would have turned out differently. *Strickland*,

466 U.S. at 694; Filing 13-1 at 9 (citing Petitioner's statements, the physical evidence, and other circumstantial evidence in finding "no doubt that any reasonable trier of fact would have found [Petitioner] guilty of the charge against him"). Petitioner's trial was not rendered "fundamentally unfair." *Marcyniuk*, 39 F.4th at 996 (saying the petitioner must show that an error rendered his trial "fundamentally unfair" in order to show prejudice).

Also under Claim 3.7, Petitioner argues further that trial counsel "did not object to the misleading DNA statistics repeatedly presented by the [S]tate (the 'prosecutor's fallacy')." Filing 69 at 26. Petitioner asserts that "[t]he prosecutor's fallacy is the assumption that the random match probability is the same as the probability that the defendant was not the source of the DNA sample." Filing 69 at 26–27 (internal quotation marks omitted) (quoting *McDaniel v. Brown*, 558 U.S. 120, 128 (2010)). Petitioner asserts that the State elicited testimony and subsequently made argument based on the prosecutor's fallacy and concludes this warrants an excuse of the ineffective assistance of counsel claim's procedural default. Filing 69 at 27. However, to demonstrate prejudice for purposes of excusing the procedural default, Petitioner must show that the error "rendered his trial 'fundamentally unfair.'" *Marcyniuk*, 39 F.4th at 996 (citing *Weaver*, 582 U.S. at 300). Even assuming the State erroneously engaged in the prosecutor's fallacy, the DNA evidence would have remained extremely probative of Petitioner's guilt. Additionally, as explained by the Nebraska Supreme Court, Petitioner's own statements and other circumstantial evidence give little room to doubt the integrity of the proceedings. *See* Filing 13-1 at 9 ("Given [Petitioner's] statements, the physical evidence, and other circumstantial evidence, we have no doubt that any reasonable trier of fact would have found [Petitioner] guilty of the charge against him. In particular, no reasonable trier of fact could overlook the testimony of Dennis, Smith, and

Shaffer, each of whom was interviewed several weeks before [Petitioner's] DNA was identified on Amber's clothing and at least a month before Amber's body was found in Hummel Park.").

Petitioner's final argument with respect to Claim 3.7 is that "[t]rial counsel did not object to the State's expert describing a 'handprint' at Area H2 despite longstanding evidentiary rules governing experts." Filing 69 at 28. As noted by Judge Carson, "trial counsel did object on foundation and speculation grounds when [the State's expert] testified 'To me [Area H2] looked like a handprint,' and the objection was overruled." *Ellis*, 2026 WL 123276, at *20 (quoting Filing 13-24 at 208–09). Additionally, Neb. Rev. Stat. § 27-701 permits opinion testimony on questions such as whether markings on jeans look like handprints. Neb. Rev. Stat. § 27-701. The jury cannot be said to have been under the impression that the State's expert was testifying in her capacity as an expert in answering the question relating to perception—especially where the jury had the photograph of Area H2 and could determine for themselves whether the photograph included a shape resembling a handprint. Even so, the line of questioning did not—even if in error—render the proceedings fundamentally unfair. *Marcyniuk*, 39 F.4th at 996 (citing *Weaver*, 582 U.S. at 300). Petitioner's objection relating to Claim 3.7 is therefore overruled.

Claim 3.8 is the final subpart of Claim 3 that Petitioner objects to. "Claim[] 3.8 asserts that [Petitioner's] trial counsel [was] ineffective because they misstated the DNA statistic in [a] way that made it more likely the DNA came from [Petitioner.]" Filing 69 at 29. As acknowledged by Petitioner, the Court has already found that Claim 3.8 was anticipatorily defaulted. Filing 69 at 29 (citing Filing 46). Petitioner maintains "that cause and prejudice exist to excuse any procedural default." Filing 69 at 30. An ineffective assistance of counsel claim must be "substantial" for purposes of excusing default. *Shinn*, 596 U.S. at 389–90. To be substantial, the claim must have "some merit," *Martinez*, 566 U.S. at 14, and the petitioner must show that the counsel's allegedly

deficient performance prejudiced him, *Marcyniuk*, 39 F.4th at 996. To demonstrate prejudice, the petitioner must show that his trial counsel's error "rendered his trial 'fundamentally unfair.'" *Marcyniuk*, 39 F.4th at 996 (citing *Weaver*, 582 U.S. at 300). It is Petitioner's argument that trial counsel was ineffective by repeatedly stating an incorrect DNA probability statistic with respect to Area H2. Filing 69 at 30–31. That is, the defendant argues that trial counsel mistakenly stated that the likelihood that an unrelated individual matched Area H2 was "1 in 2.63 billion rather than 1 in 2.36 billion."[2] Filing 1 at 66. This claim for ineffective assistance of counsel does not have "some merit" because, under *Strickland*, had trial counsel used 2.36 billion rather than 2.63 billion, the result of the proceeding would not have been different with any "reasonable probability." *Strickland*, 466 U.S. at 694. Moreover, it cannot be said that trial counsel's error "rendered [petitioner's] trial 'fundamentally unfair'" because the change in probability is not material, and the correct figure would not have affected the trial. *Marcyniuk*, 39 F.4th at 996. There is therefore no merit to this objection. Petitioner's objections relating to Claim 3 are overruled.

*4. Petitioner's Fourth Specific Objection: Jailhouse Informant Testimony*

Petitioner's fourth claim asserts that "[t]he admission of testimony from jailhouse informants violated [Petitioner's] rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and *Brady v. Maryland*." Filing 1 at 67 (original emphasis omitted). Petitioner's claim specifically relates to the admission of testimony at trial of jailhouse informants Dennis and Chambers. Filing 1 at 67–68. The claim, as it relates to Dennis, was exhausted in state

[2] Relating to these figures, Judge Carson quoted DNA expert Kaye Shepard's trial testimony. *Ellis*, 2026 WL 123276, at *20. Shepard is quoted in the Findings and Recommendation as stating, "When I ran the numbers, the probability of an unrelated individual matching a partial DNA profile found within the mixture given that Roy Ellis expresses such a profile is 1 in 2.63 billion Caucasians [ ] 1 in 2.36 billion African Americans, and 1 in 4.32 American Hispanics." *Id.* (quoting Filing 13-24 at 224–25). The Court notes that Shephard's testimony actually stated that "the probability of an unrelated individual matching a partial DNA profile found within the mixture given that Roy Ellis expresses such a profile is 1 in 2.63 billion Caucasians, 1 in 2.36 billion African Americans, and 1 in 4.32 *billion* American Hispanics." Filing 13-24 at 224–25 (emphasis added).

court and can therefore be considered on the merits. However, Petitioner does not dispute that the claim, as it relates to Chambers, is procedurally defaulted, although Petitioner argues that the default should be excused. Filing 54 at 36; Filing 69 ("[Petitioner's] procedural default should be excused."). Judge Carson rejected the claim on the merits as to Dennis and found no grounds for excusing the procedural default as to Chambers. *Ellis*, 2026 WL 123276, at *21. Petitioner objects to Judge Carson's findings as to both jailhouse informants.

Petitioner argues that the State withheld *Brady* material by failing to disclose plea deals that the State made with Dennis and Chambers. Filing 69 at 31–33. Prosecutors have an affirmative obligation to disclose evidence favorable to the defense. *See Giglio v. United States*, 405 U.S. 150, 154–55 (1972); *Tyler v. Frakes*, 8:19CV170, 2020 WL 4922195, at *13 (D. Neb. Aug. 21, 2020). Neb. Rev. Stat. § 29-4704 requires prosecutors to make certain disclosure obligations when jailhouse informers are used, including the disclosure of known criminal history of the informant, any benefit requested or offered to the informant, other cases in which the informant testified in the same capacity, and any occasion in which the informant recanted prior testimony about statements. Neb. Rev. Stat. § 29-4704; *see also Giglio*, 405 U.S. at 154–55 (saying "[t]he prosecution must disclose to the defense an agreement with a witness . . . that may motivate the witness to testify and may affect the outcome of that trial").

It appears that Petitioner is continuing to assert that the prosecution suppressed plea deals with Dennis and Chambers. Filing 69 at 31 ("The Findings and recommendation recommended dismissal of this claim on the grounds that Ellis cannot point to evidence in the record of plea deals with jailhouse informants Dennis or Chambers. Not so."). The record does not bear this conclusion. Petitioner states that

> Chambers' original sentence was 151 months. After trial, his sentence was reduced to 130 months. It was reduced again, two weeks later, to 60 months. In other words,

> the State's refusal to disclose the deal that Chambers received was an "objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule."

Filing 69 at 32 (quoting *Murray*, 477 U.S. at 488). Nothing in the record shows that the State made any offers to Chambers. Filing 26; Filing 30 at 38 n.11 (including record citations). The external "cause" that Petitioner asserts would excuse his procedural default with respect to Chambers does not exist in the record as, while Chambers testified to hoping to receive something in exchange for his testimony, the evidence does not show that Chamber had a plea deal that should have been disclosed. As noted by Judge Carson, "even if the record raises some inference that a deal may have been in the works, this too is not enough because the determining factor is whether a plea or cooperation agreement was made before a defendant's trial." *Ellis*, 2026 WL 123276, at *22; *see Dye v. Stender*, 208 F.3d 622, 665 (8th Cir. 2000); *see also United States v. Molina*, 75 F.3d 600, 602 (10th Cir. 1996) (noting that "[r]equiring the government to disclose potential plea agreements and offers of plea agreements would place an unreasonable burden on the government, and such offers are too speculative and uncertain to be material" (emphasis added)) (collecting cases). Therefore, Petitioner cannot demonstrate the "cause" necessary to excuse his procedural default with respect to Chambers.

Petitioner's claim is no stronger with respect to Dennis. Petitioner complains that "[a]fter trial, Dennis received a plea deal of 2 to 4 years for his multiple felony counts, despite his '11 or 12' felonies." Filing 69 at 31 (quoting Filing 1 at 69, 71). Petitioner states, "[t]he judgement of the state court is contrary to or an unreasonable application of [federal law] because Dennis was permitted to testify that no deal was offered when he did in fact receive a deal after [Petitioner's] trial." Filing 69 at 31. As explained by the Nebraska Supreme Court, "there is no evidence that the plea agreement had been reached, or contemplated, at the time Dennis testified. In other words, nothing in the record is contrary to the district court's express finding, in ruling on Ellis' motion

to exclude testimony, that the relevant statutes were substantially complied with." Filing 13-1 at 11; *Dye*, 208 F.3d at 665 ("Whether the State made deals with [a witness] is a factual question entitled to the presumption of correctness unless the petitioner can clearly and convincingly show otherwise."). The State maintained that there was no deal with Dennis throughout the prosecution, and Dennis also testified that he had not been promised anything in exchange for his testimony. Filing 13-26 at 131–37; Filing 13-22 at 163, 184–85; *see Dye*, 208 F.3d at 665; *Molina*, 75 F.3d at 602 (saying that "[r]equiring the government to disclose *potential* plea agreements and offers of plea agreements would place an unreasonable burden on the government, and such offers are too speculative and uncertain to be material" (emphasis added)). Petitioner has failed to show an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, or an unreasonable application of clearly established federal law as required by AEDPA. 28 U.S.C. § 2254(d)(1)–(2). Petitioner's fourth objection is therefore overruled.

*5. Petitioner's Fifth Specific Objection: Mitigating Circumstances at Penalty Phase and Ineffective Assistance of Counsel*

Petitioner's fifth claim asserts that "[Petitioner's] Sixth Amendment right to counsel was violated when trial counsel failed to adequately investigate and present mitigating circumstances for the penalty phase of trial." Filing 1 at 73 (original emphasis omitted). Petitioner states that "[b]y not investigating such mitigation, trial counsel could not make an informed and reasoned decision as to how to present mitigation, and their representation fell below an objective standard of reasonableness." Filing 1 at 73. Petitioner asserts that trial counsel failed to "perform even a rudimentary investigation into [Petitioner's] social history." Filing 1 at 79 (original emphasis omitted). Petitioner also asserts that "[t]rial counsel failed to obtain reasonably available records related to [Petitioner's] behavior during prior prison terms." Filing 1 at 80. Petitioner asserts next that "[t]rial counsel failed to obtain reasonably available testing to determine [Petitioner's] IQ."

Filing 1 at 81. Petitioner asserts that "[t]rial counsel failed to obtain reasonably available records related to [Petitioner's] psychiatric health and prior treatment despite putting his psychiatric health at issue." Filing 1 at 82 (original emphasis omitted). Finally, Petitioner asserts that "[t]rial counsel failed to obtain reasonably available evidence of the effect [Petitioner's] execution would have on his family members." Filing 1 at 82. Petitioner concedes the Court found the claim to be procedurally defaulted but contends that cause and prejudice exist to excuse any procedural default. Filing 69 at 34 (citing Filing 46); Filing 46 at 21. Judge Carson found the claim to be procedurally defaulted and further found that the default is not excused. *Ellis*, 2026 WL 123276, at *23 ("While [Petitioner] argues that there was additional information gleaned from the presentence investigation reports and other materials that warranted further investigation, there is no good reason as to why [Petitioner] could not have made those arguments when he filed his first postconviction motion.").

As Judge Carson correctly pointed out, there is not "cause or prejudice to excuse his default as the issues now raised were known long ago." *Ellis*, 2026 WL 123276, at *23. More importantly, Petitioner's claim is not substantial. The Eighth Circuit has explained that capital defense is required to "conduct a thorough background investigation and to exercise reasonable, professional judgment in determining the mitigation evidence to present." *Sinisterra v. United States*, 600 F.3d 900, 907 (8th Cir. 2010). However, the evidence obtained is not required to be used. *Id.* "In other words . . . counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, trial counsel is not required to "scour the globe on the off chance something will turn up." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). "[F]ailing to present mitigating evidence may be ineffective assistance if, due to inadequate trial preparation and investigation, 'counsel has through neglect

failed to discover such evidence.'" *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991) (citation omitted). Courts look to "norms of adequate investigation in preparing for the sentencing phase of a capital trial, when defense counsel's job is to counter the State's evidence of aggravated culpability with evidence in mitigation" in determining whether counsel's investigation was ineffective. *See Rompilla*, 545 U.S. at 380–81.

Petitioner asserts in his objection that "trial counsel's decision not to investigate or present the many possible avenues of personal history and family mitigation was not strategic, it was a failure to adequately prepare for trial." Filing 69 at 35. Petitioner asserts that trial counsel failed because, "despite having the names, and in some cases the locations, of people who could have supplied information about his family history and childhood, trial counsel did not attempt to contact or interview any of [Petitioner's] family members." Filing 1 at 79. "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the trial.'" *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996) (quoting *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994)). Petitioner cannot demonstrate prejudice because he did not identify any witnesses, and he further has not demonstrated that the outcome would have changed. *See* Filing 13-33 at 21. Put another way, Petitioner has only made conclusory allegations, which are unable to make a showing of prejudice.

Petitioner also asserts in his objection that trial counsel did not attempt to obtain Petitioner's records from prior incarcerations that would show he was able to adapt to incarceration. Filing 69 at 36. Even if trial counsel obtained such records showing that Petitioner was able to adapt, however, the evidence "would barely have altered the sentencing profile." *See Strickland*, 466 U.S. at 699–700. Petitioner also asserts that trial counsel had in their possession

records showing Petitioner had an IQ score indicating extremely low intellectual functioning but made no investigation to confirm and support that score. Filing 69 at 36–37. Relatedly, Petitioner asserts that trial counsel should have obtained other mental health records showing "the seriousness of the psychiatric problems from which [Petitioner] suffered." Filing 1 at 81–82; Filing 69 at 37. This assertion appears to be in tension with the conclusion that records from prior incarcerations would have shown that Petitioner could adapt. Filing 1 at 77 (saying the presentence investigation report included information saying that Petitioner was diagnosed with schizophrenia). Nonetheless, it is clear that Petitioner's attorneys considered and advanced arguments relating to Petitioner's cognitive functioning but that further pursuit of a mitigation defense could not be made on such grounds. Filing 13-33 at 21–23; Filing 13-33 at 23 ("Mr. Hug and I had discussed having him evaluated for competency/insanity. And between the two of us, we just didn't see any evidence of it."). As Judge Carson correctly observed, "[t]he decision to forego a new IQ test is not evidence that Ellis' mental functioning was ignored, but instead supports a finding that counsel determined it need not (or should not, for fear of the results) be undertaken in light of other evaluations." *Ellis*, 2026 WL 123276, at *25; *see Hannon v. Sec'y, Dep't of Corr.*, 622 F. Supp. 2d 1169, 1188 (M.D. Fla. 2007), *aff'd*, 562 F.3d 1146 (11th Cir. 2009). With respect to failure to obtain other mental health records, Petitioner complains that the expert relied on by trial counsel "could only review the mental health history through records actually obtained by trial counsel, and that the expert specifically testified that he was provided with only limited records." Filing 69 at 37 (original emphasis omitted). However, Petitioner's argument relies on speculative bases as to what other records should have been obtained, and, as Judge Carson pointed out, "it is not clear what additional information could be gleaned from them," *Ellis*, 2026 WL 123276, at *26. Nonetheless, Petitioner has not shown that additional information

would have done anything more than "barely . . . alter[] the sentencing profile." *Strickland*, 466 U.S. at 699–700. The outcome would not have changed. Petitioner's fifth objection is overruled.

*6. Petitioner's Sixth Specific Objection: Trial Counsel's Failure to Negotiate a Sentence Less Than Death and Ineffective Assistance of Counsel*

Petitioner's sixth claim asserts that his "Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to take reasonable steps to negotiate a sentence less than death." Filing 1 at 83 (original emphasis omitted). Petitioner objects to Judge Carson's conclusion that the claim is procedurally defaulted. Filing 69 at 38. Petitioner asserts that this is so because his Second PCM remains pending in state court. Filing 69 at 38. According to Petitioner, "[b]ecause it is for the state court to determine the posture of the successor postconviction motion, it is premature for Claim 6 to be dismissed on the basis of being procedurally defaulted." Filing 69 at 39. However, Judge Carson is correct that the claim was not included in Petitioner's initial PCM, and the Court has already concluded that it was futile to raise the issue in the successive PCM. Filing 48 at 5–6, 26. The objection does not argue that the procedural default should be excused. Nonetheless, the Court also finds that Petitioner could not present a "substantial" claim to excuse the default. Among other reasons, this is because Petitioner's arguments are speculative that the prosecution would have offered a plea offer. *Lafler*, 566 U.S. 168 (saying a criminal defendant has "no right to be offered a plea"); *Thibodeau v. Artis*, Case No.15-cv-13796, 2022 WL 3145961, at *4 (E.D. Mich. Aug. 5, 2022) ("Without evidence that the prosecution would have offered a favorable plea, a petitioner cannot show that he was prejudiced by counsel's failure to secure a favorable deal." (citing *Missouri v. Frye*, 566 U.S. 134, 147–49 (2012))). The State had little incentive to offer a deal given that Petitioner was effectively already serving a life sentence for another crime, and the state had overwhelming evidence of Petitioner's guilt. Petitioner's sixth objection is overruled.

7. *Petitioner's Seventh Specific Objection (Claim 7.1): Ineffective Assistance of Counsel Based on Trial Counsel's Failure to Object to Instances of Prosecutorial Misconduct Alleged in Claim 7*

Claim 7 asserts that Petitioner's "Fifth, Sixth, and Fourteenth Amendment rights were violated by prosecutorial misconduct in closing statements." Filing 1 at 90–96. Within Claim 7, Petitioner alleges six subclaims (*i.e.*, Claims 7(i)–(vi)). Petitioner contends that the prosecution: (i) engaged in improper inflammatory argument; (ii) improperly reflected on the victim's attributes; (iii) improperly bolstered witness credibility; (iv) improperly denigrated defense counsel; (v) improperly commented on propensity evidence; and (vi) argued misleading DNA facts to the jury. Filing 1 at 90–96. Judge Carson found that Claims 7(i) through (iv) and Claim (vi) are procedurally defaulted and that there is no cause to excuse the default under *Coleman*. *Ellis*, 2026 WL 123276, at *27 (citing *Coleman*, 501 U.S. at 753). Judge Carson also recommended that Claim 7(v), which the parties agree was raised on direct appeal, be denied because Petitioner "does not show how the Nebraska Supreme Court's analysis resulted in a decision that was contrary to or involved an unreasonable application of established federal law, under 28 U.S.C. § 2254(d)." *Ellis*, 2026 WL 123276, at *28. Petitioner's Objections do not specifically object to Judge Carson's recommended disposition as to any part of Claim 7 (*i.e.*, Claims 7(i)–(vi)). Filing 69 at 38–39 (moving directly from objection relating to Claim 6 to objection relating to Claim 7.1); Filing 69 at 39–54 (failing to argue excuse as to Claims 7(i)–(iv) and (vi) and failing to argue that the Nebraska Supreme Court's decision was contrary to or involved an unreasonable application of federal law as to Claim 7(v)).

Claim 7.1 is Petitioner's next claim. Although Claim 7.1 is separate from Claim 7 and Claim 7's subparts, Claim 7.1 relies on the misconduct alleged in the subparts of Claim 7. Claim 7.1 asserts that "[t]rial counsel was ineffective for not objecting to the prosecution's misconduct [asserted in Claim 7] in closing statements, asking for a curative instruction, or moving for a

mistrial." Filing 1 at 96. Said differently, Petitioner asserts an ineffective assistance of counsel claim based on trial counsel's failure to object to, request a curative jury instruction for, or bring a motion for mistrial for the instances of prosecutorial misconduct alleged in Claim 7. Filing 1 at 96–97. Petitioner concedes that the Court found Claim 7.1 procedurally defaulted but "maintains that cause and prejudice exist to excuse any procedural default to Claim 7.1" pursuant to the *Martinez-Trevino* exception. Filing 54 at 61. Judge Carson found that Petitioner has "not made a substantial claim, or one with any merit" and that the claims should be "denied in their entirety." *Ellis*, 2026 WL 123276, at *30. Petitioner objects to Judge Carson's conclusion. Filing 69 at 39.

To articulate a substantial claim for purposes of excusing the default, Petitioner must show that "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In general, "the prosecutor's closing argument [must have been] so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial." *Sublett v. Dormire*, 217 F.3d 598, 600 (8th Cir. 2000) (internal quotation marks omitted) (quoting *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999)). A two-part test exists for purposes of determining prosecutorial misconduct: "(1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Conrad*, 320 F.3d 851, 855 (8th Cir. 2003) (first citing *United States v. McGuire*, 45 F.3d 1177, 1189 (8th Cir. 1995); and then citing *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir. 1985)). The Eighth Circuit uses "the following three factors to determine the prejudicial effect of prosecutorial misconduct: '(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative

actions taken by the court.'" *Conrad*, 320 F.3d at 855 (quoting *Hernandez*, 779 F.2d at 460). "The facts of each case must be reviewed independently to ascertain whether the comment was 'unduly prejudicial,' or was 'plainly unwarranted and clearly injurious'" *United States v. Splain*, 545 F.2d 1131, 1135 (8th Cir. 1976) (citations omitted).

Claim 7.1 asserts an ineffective assistance of counsel claim based in part on trial counsel's failure to object in closing to prosecutorial misconduct alleged in Claim 7(i). Filing 1 at 96. In Claim 7(i) Petitioner asserts that the prosecution "employed several arguments that had no purpose other than to appeal to the emotions of the jury." Filing 1 at 90–92. Petitioner asserts that the prosecution improperly discussed photographs, made calls for justice, and told jurors it was their responsibility to convict Petitioner. Filing 1 at 90–92; Filing 69 at 40 (same). In particular, Petitioner highlights the following statements in his Objections. With respect to the discussion of images, the prosecution stated,

> Do you think we wanted to do that? Do you really think we wanted to have everyone see those images? It's hard enough for us to live with those when we see them. You all have to live with them now.

Filing 69 at 40 (quoting Filing 13-25). With respect to calls for justice, the prosecution stated, "[y]ou know, that's what this is all about. We have 12 citizens—14 citizens who are here because it's about justice. It's about seeking justice for a little girl." Filing 69 at 41 (quotation modified) (quoting Filing 13-25). With respect to the responsibility of the jury, the prosecution stated,

> [E]veryone here has been responsible and done their job. We've given you proof beyond all reasonable doubt in the case about the crime that occurred and about the perpetrator of that crime. Now it's time to do your responsibility.

Filing 69 at 41 (quotation modified) (quoting Filing 13-25). Petitioner asserts an ineffective assistance of counsel claim in Claim 7.1 based on the prosecution's above comments. Filing 1 at 96–97.

"In closing arguments, a prosecutor is entitled to make a fair response and rebuttal when the defense attacks the government's case." *United States v. Ziesman*, 409 F.3d 941, 954 (8th Cir. 2005) (internal quotation marks omitted) (quoting *United States v. Flynn*, 196 F.3d 927, 930 (8th Cir. 1999)). "[U]nless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible." *United States v. Obi*, 25 F.4th 574, 580 (8th Cir. 2022) (quotation modified) (quoting *United States v. Johnson*, 968 F.2d 768, 770 (8th Cir. 2022)). It is also permissible to remind the jury of their responsibility to follow the law. *See Sims v. Brown*, 425 F.3d 560 (9th Cir. 2005). Like Judge Carson, the Court concludes that the remarks identified in Claim 7(i) and in Petitioner's Objections were not improper, and Petitioner therefore cannot establish a substantial claim based on the foregoing statements for ineffective assistance of counsel in Claim 7.1.

Claim 7.1's ineffective assistance of counsel claim is also based in part on trial counsel's failure to object to prosecutorial misconduct alleged in Claim 7(ii). In Claim 7(ii), Petitioner asserts that the prosecution made "lengthy remarks about Harris' personal attributes," which allegedly constituted an improper appeal to the jurors' sympathies. Filing 1 at 92–93. The prosecution is quoted in the Petition as saying *inter alia* that Harris was "a responsible little girl," that "she was going to school," that her teacher said she "volunteered a lot," and that "if she wasn't talking to somebody in the hallway, she was singing." Filing 1 at 93 (quoting Filing 13-25). "[I]t is well established that appeals to the passion, prejudice, or sympathy of jurors during closing argument are improper, and may be grounds for reversal." *United States v. Eagle*, 515 F.3d 794, 805 (8th Cir. 2008) (citing *Viereck v. United States*, 318 U.S. 236, 247 (1943)). Petitioner asserts an ineffective assistance of counsel claim in Claim 7.1 based on the prosecution's remarks about Harris asserted in Claim 7(ii). Filing 1 at 96–97.

Like Judge Carson, the Court concludes that the comments made about Harris were not improper, as they were largely a summary of trial testimony and concerned events leading up to an event or a description of the evidence. Moreover, the "senseless and unspeakably brutal death" of Harris "naturally and inevitably evoke[s] deep sympathy from the jury," so the kind of comments provided by the prosecution "were not likely to evoke to any further appreciable degree the jury's sympathy for the victim[]." *United States v. Johnson*, 495 F.3d 951, 980 (8th Cir. 2007). Petitioner does not make a substantial ineffective assistance of counsel claim because the comments were not so prejudicial as to deprive him of a fair trial. *Darden*, 477 U.S. at 181.

Claim 7.1's ineffective assistance of counsel claim is also based in part on trial counsel's failure to object to prosecutorial misconduct alleged in Claim 7(iii). In Claim 7(iii), Petitioner asserts that the prosecution improperly bolstered the credibility of jailhouse informants. Filing 1 at 93–94. Petitioner asserts that "the prosecution argued that the informants were 'Believable? Credible? Absolutely. Because [Petitioner's] questions were so bizarre, out of the norm, that's why they're credible. That's what makes them credible." Filing 1 at 94 (quoting Filing 13-25). Petitioner asserts that "[m]aking credibility determinations is exclusively the role of the trier of fact," and "the prosecution's repeated bolstering of its witnesses' credibility improperly invaded the province of the jury in violation of [Petitoner's] rights under the Fifth, Sixth, and Fourteenth Amendments." Filing 1 at 94; Filing 69 at 45 (same). Petitioner asserts an ineffective assistance of counsel claim in Claim 7.1 based on the prosecution's comments as alleged in Claim 7(iii). Filing 1 at 96–97.

The Supreme Court of Nebraska has provided that, "when a prosecutor's comments rest on reasonably drawn inferences from the evidence, he or she is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the

relative believability of witnesses for the State and the defense." *State v. Dubray*, 854 N.W.2d 584, 604 (Neb. 2014); *see also United States v. Karam*, 37 F.3d 1280, 1289 (8th Cir. 1994). The comments at issue here were not vouching for credibility. Instead, the comments argued that inferences drawn from the evidence show the relative believability of the witnesses. *See* Filing 13-25 at 206–08 ("Believable? Credible? Absolutely. Because those questions were so bizarre, out of the norm, that's why they're credible. That's what makes them credible."). Additionally, as pointed out by Judge Carson, Petitioner's closing argument asserted that the prosecution's witnesses lack credibility and that they were motivated to testify beyond the desire to tell the truth. Filing 13-25 at 185–89. However, statements made by prosecution when rebutting credibility claims asserted by the defense are generally not inappropriate. *United States v. Lopez*, 414 F.3d 954, 960 (8th Cir. 2005) ("We find that the district court properly overruled this objection because the prosecutor was merely responding to arguments that one of the defense attorneys made in his closing argument." (emphasis omitted)). Petitioner has failed to assert a substantial claim for ineffective assistance of counsel in Claim 7.1 based on the comments at issue in Claim 7(iii).

Claim 7.1's ineffective assistance of counsel claim is also based in part on trial counsel's failure to object to prosecutorial misconduct alleged in Claim 7(iv). In Claim 7(iv), Petitioner asserts that the prosecution improperly denigrated defense counsel. Filing 1 at 94–95. Petitioner notes that, "in responding to one of the defense points in closing, the prosecution argued, 'does [defense counsel] really expect you to believe that'" and that "the prosecution accused defense counsel of 'trying to confuse you' and 'throwing out red herrings.'" Filing 1 at 94–95 (quoting Filing 13-25); Filing 69 at 45–46. Petitioner asserts an ineffective assistance of counsel claim in Claim 7.1 based on the trial counsel's failure to object to the prosecution's comments as alleged in Claim 7(iv). Filing 1 at 96–97.

However, "when a prosecutor's comments rest on reasonably drawn inferences from the evidence, he or she is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense." *Dubray*, 854 N.W.2d at 604. The comments Petitioner complains about do not constitute prosecutorial misconduct, as they were based on reasonably drawn inferences and were meant to communicate the relative believability of the witnesses of the State and the defense. The comments do not support a substantial claim of ineffective assistance of counsel for the trial counsel's failure to object to them. *Darden*, 477 U.S. at 181 (saying that to articulate a substantial claim for purposes of excusing the default, Petitioner must show that "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'" (quoting *Donnelly*, 416 U.S. at 643)). Petitioner therefore fails to assert an ineffective assistance of counsel claim based on the conduct alleged in Claim 7(iv).

Claim 7.1's ineffective assistance of counsel claim is also based in part on trial counsel's failure to object to prosecutorial misconduct alleged in Claim 7(v). In Claim 7(v), Petitioner asserts that "the prosecution improperly argued that Rule 404 evidence could be used to prove [Petitioner's] propensity to commit Harris' murder." Filing 1 at 96; Filing 69 at 46–51. However, like the Nebraska Supreme Court and Judge Carson, this Court has elsewhere found that the admission of the objected to propensity evidence was not prejudicial. Therefore, Petitioner's ineffective assistance of counsel claim as it relates to the conduct alleged in Claim 7(v) is not substantial. *Darden*, 477 U.S. at 181.

Claim 7.1's ineffective assistance of counsel claim is also based in part on trial counsel's failure to object to prosecutorial misconduct alleged in Claim 7(vi). In Claim 7(vi), Petitioner asserts that "the prosecution improperly argued substantially misleading DNA statistics and

evidence to the jury in closing." Filing 1 at 96; Filing 69 at 51–54. The DNA-related issues that undergird this claim were raised in Petitioner's third claim. Filing 1 at 96 ("As discussed *supra* at [Claim 3], the prosecution improperly argued substantially misleading DNA statistics and evidence to the jury in closing."). Claim 3 presented various prosecutorial misconduct subclaims based on the prosecution's use of DNA evidence at trial. Filing 1 at 50 (asserting, for instance, that "[t]he prosecution knowingly presented substantially misleading and inadmissible evidence that [Petitioner] was a contributor to the DNA at Area H"). In Claim 7.1, Petitioner appears to assert that trial counsel was ineffective in failing to object to the instances of prosecutorial misconduct in Claims 3.1 through 3.6 during the prosecution's closing argument. Filing 1 at 96; Filing 69 at 51–54. This claim is substantially similar to Claim 3.7, which asserted that "[t]rial counsel failed to adequately object to and challenge the misleading and inadmissible DNA evidence."[3] Filing 1 at 62–66. The Court found that Claim 3.7 lacked merit and that any procedural default could not be excused. Given the substantial overlap between Claim 3.7 and the part of Claim 7.1 based in Claim 7(vi), the Court finds that Petitioner has also not asserted a substantial claim with respect to the latter claim. Therefore, Petitioner's default cannot be excused under *Martinez-Trevino*. *Compare* Filing 1 at 62, *with* Filing 1 at 95. Petitioner's claim for ineffective assistance of counsel based in conduct asserted in Claim 7(vi) is not substantial.

Like Judge Carson, the Court also finds that relief would remain unwarranted even if some of the comments made by the prosecutor were improper because the statements, understood separately or collectively, did not render Petitioner's trial so unfair that the conviction equates to a denial of due process. *Darden*, 477 U.S. at 181 (saying that to articulate a substantial claim for

---

[3] The last subpart of Claim 3 (*i.e.*, Claim 3.8) did not have to do with a ground for objection, as it asserted that "[t]rial counsel was ineffective by repeatedly saying an incorrect DNA statistic to the detriment of [Petitioner]." Filing 1 at 66 (original emphasis omitted).

purposes of excusing the default, Petitioner must show that "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (citation omitted)). The evidence marshaled against Petitioner was indeed overwhelming, and the trial court instructed the jury that the statements and argument of counsel were not evidence. *See Eagle*, 515 F.3d at 806 ("A district court's instruction that closing arguments are not evidence is a curative action that serves to alleviate any risk of prejudicial impact." (citation omitted)); Filing 13–15 at 23 (Instruction No. 9 saying "[t]he following things are not evidence: 1. Statements, arguments, and questions of the lawyers for the State and the Defendant"). The objection made to Judge Carson's recommended disposition as to Claim 7.1 is therefore overruled.

*8. Petitioner's Eighth Specific Objection: Judicial Bias*

Petitioner's eighth claim alleges that "[Petitioner's] trial was presided over by a biased judge in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution." Filing 1 at 97 (original emphasis omitted). In his objection, Petitioner concedes that the claim is procedurally defaulted but asserts that he "can overcome his procedural default of this claim because the judicial bias present during his trial and capital sentencing is a due process violation that mandates a finding of structural error." Filing 69 at 54–55. Petitioner complains that the trial judge refused to recuse himself, denied various motions and made rulings against him, "had predetermined the credibility of witness Antoinette Pollack [sic], whose testimony was used to find one of the aggravating factors," and "presided over [Petitioner's] sentencing panel, which sentenced [Petitioner] to death." Filing 69 at 55–56.

"The defining feature of a structural error is that it 'affects the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Weaver*, 582 U.S. at 295 (quoting *Arizona v. Fulminate*, 499 U.S. 279, 310 (1991)). Judicial bias will constitute structural error only in limited circumstances. *See, e.g.*, *Quercia v. United States*, 289 U.S. 466,

468 (1933) (reversing judgment where a judge advised the jury of the judge's assessment of the defendant's credibility); *United States v. Pritchett*, 699 F.2d 317, 320 (6th Cir. 1983); *Tyler v. Swenson*, 427 F.2d 412, 417 (8th Cir. 1970). "Unfavorable rulings, even 'ill-founded' rulings, do not by themselves demonstrate judicial bias or structural error." *Kachina v. Roy*, Civ. No. 12-873 ADM/JJG, 2013 WL 375573, at *3 (D. Minn. Jan. 31, 2013) (citing *Jones v. Luebbers*, 359 F.3d 1005, 1013 (8th Cir. 2004)).

The Eighth Circuit has explained that judges are presumed to be impartial. *See Scenic Holding, LLC v. New Bd. of Trs. of Tabernacle Missionary Baptist Church*, 506 F.3d 656, 662 (8th Cir. 2007) ("We presume the honesty, integrity, and impartiality of those serving as judges."). The Eighth Circuit has further explained that "[t]he Supreme Court has recognized that 'judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Id.* at 662–63 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Petitioner has not met the demanding standards noted above. Petitioner complains of many of the decisions made by the trial judge in his objection, but he fails to assert bias-driven reasons that could cause the Court to question the honesty, integrity, or impartiality of the trial judge. Filing 69 at 45; *Scenic Holding, LLC*, 506 F.3d at 662 ("We presume the honesty, integrity, and impartiality of those serving as judges."). The closest that Petitioner comes to providing a basis for questioning the trial judge is by asserting that the trial judge "had predetermined the credibility of witness Antoinette Pollock, whose testimony was used to find one of the aggravating factors."[4] Filing 69 at 55. However, this assertion remains

[4] Petitioner asserts that the trial judge, Judge Schatz, predetermined the credibility of Antoinette Pollock because, prior to Petitioner's capital murder trial, the trial judge

> presided over case number 170-163 where [Petitioner] was charged with first-degree terroristic threats and false imprisonment. That case involved an unrelated (to the capital charge) incident between [Petitioner] and Antoinette Pollock. [Petitioner] took a plea deal in that case; however,

woefully insufficient to show bias of the sort constituting structural error, as the record shows that the trial judge stated, "I see no reason, number one, that I have formed any opinion about her credibility prior to her having testified, nor how that could possibly affect my weighing her testimony given in this Court in July of this year on this particular case." Filing 13-17 at 198–99. Like Judge Carson, the Court finds no reason to doubt this explanation in the record. The record simply does not contain any evidence of judicial bias of the sort constituting structural error. It is not a surprise that Petitioner's Objections do not refer to any other concrete circumstances that could meet the demanding standards required to find structural error. Filing 69 at 54–56 (citing only denied requests and motions and the purported predetermination of Antoinette Pollock's credibility). Therefore, Petitioner's claim remains procedurally barred and his eighth objection is overruled.

*9. Petitioner's Ninth Specific Objection: Unconstitutionally Vague Statutory Aggravating Factors*

Petitioner does not object to Judge Carson's recommended disposition of Claim 9.[5] Petitioner's next objection relates to Claim 10, which asserts Petitioner's "death sentence relies on unconstitutionally vague statutory aggravating factors in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution." Filing 1 at 102. This claim has two

---

> during the sentencing, Judge Schatz said of the case "no matter how many [inconsistent] statements she's made, the relationship can be characterized as one of terrorism of Ms. Pollock and her children." At [Petitioner's] capital murder trial, the prosecution called Antoinette Pollock during the aggravation circumstances hearing to testify to the same information.

Filing 1 at 97–98 (internal citations omitted).

[5] Judge Carson observed in his Findings and Recommendation that "[t]he court will skip Claim 9 and proceed to Claim 10 as Ellis did in his Brief in Response to Respondent's Answer (Filing No. 54 at 66-67). It appears Ellis acknowledges that Claim 9 is not an independent claim, but rather a reiteration of his prior arguments that Claims 5 and 6 are 'substantial' ineffective assistance of counsel claims resulting in an excuse for any procedural default. That analysis has already been made and need not be repeated." *Ellis*, 2026 WL 123276, at *31 n.18. Petitioner appears not to contest the way Judge Carson handled his ninth claim, *see* Filing 69, and the Court identifies no reason not to handle the claim the same way here, as it does appear that Claim 9 is not an independent claim and the Court has already addressed the claim's substance elsewhere.

subclaims. Filing 69 at 56 ("[Petitioner's] death sentence relies on two unconstitutionally vague aggravating factors."). First, Petitioner asserts that "[t]he statutory factor found at Nebraska Revised Statutes § 29-2523(1)(a) is unconstitutionally vague under *Johnson*." Filing 1 at 103 (original emphasis omitted) (citing *Johnson v. United States*, 576 U.S. 591 (2015)) (styling claim as Claim 10.1). Second, Petitioner asserts that "[t]he aggravating circumstance found at Nebraska Revised Statutes § 29-2523(1)(d) is unconstitutionally vague." Filing 1 at 110 (original emphasis omitted) (styling claim as Claim 10.2).

Section 29-2523 provides aggravating circumstances. The aggravating circumstance that Petitioner argues is unconstitutionally vague in Claim 10.1 of the Petition states: "The offender was previously convicted of another murder or a crime involving the use or threat of violence to the person, or has a substantial prior history of serious assaultive or terrorizing criminal activity." Neb. Rev. Stat. § 29-2523(1)(a). Petitioner argues that, in *Johnson v. United States*, 576 U.S. 591, the Supreme Court made a change in substantive law that was "made explicitly retroactive." Filing 54 at 68. This substantive change was the decision "that the residual clause of the Armed Career Criminal Act of 1984 was unconstitutionally vague." Filing 1 at 103. Petitioner asserts that his "death sentence relies, in part, on similar language found at [section] 29-2523(1)(a)." Filing 1 at 103. According to Petitioner, "the death sentence violates [his] rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and must be vacated." Filing 1 at 103.

Judge Carson found that Claim 10.1 was procedurally defaulted because "if *Johnson* announced a new rule applicable to [Petitioner's] vagueness claim, any postconviction motion addressing that claim should have been raised no later than one year after June 26, 2015, when *Johnson* was decided." *Ellis*, 2026 WL 123276, at *32 (citing Neb. Rev. Stat. § 29-3001(4)(d) for

the proposition that Nebraska law requires a defendant to file a verified motion for postconviction relief within one year from the date when a constitutional claim is initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court). Judge Carson found that "Claim 10.1 was not fairly presented to the Nebraska Supreme Court, and the time for doing so has passed." *Id.* Petitioner "objects to that finding because, although he did not present his claim to the Nebraska Supreme Court with a citation to *Johnson*, he did present the same arguments [in his direct appeal to the Nebraska Supreme Court] in support of the relief that was eventually relied on by the Supreme Court in *Johnson*." Filing 69 at 57–58 ("[Petitioner's] direct appeal counsel anticipated the holding in *Johnson* and presented arguments identical to those advanced in *Johnson*, which became the bedrock of that opinion. In this way, [Petitioner] exhausted his constitutional claim even if he did not cite to *Johnson*.").

The Court finds Petitioner's argument that Claim 10.1 was not procedurally defaulted unavailing because the claim was not presented to the Nebraska Supreme Court on direct appeal. Claim 10.1 asserts that "[t]he statutory aggravating factor found at Nebraska Revised Statutes § 29-2523(1)(a) is unconstitutionally vague under *Johnson*." Filing 1 at 103. Section 29-2523(1)(a) provides that an aggravating circumstance exists where "[t]he offender was previously convicted of another murder or a crime involving the use or threat of violence to the person, or has a substantial prior history of serious assaultive or terrorizing criminal activity." Neb. Rev. Stat. § 29-2523(1)(a). The Petition asserts that "[t]he sentencing panel analyzed the statute's two clauses: the first containing the unconstitutionally vague language 'crime involving the use or threat of violence to the person' and the second containing the unconstitutionally vague language 'substantial history of serious assaultive or terrorizing criminal activity.'" Filing 1 at 105. Petitioner asserts that "[b]oth clauses of Nebraska's statutes are similarly vague. As a result, they

are now unconstitutionally vague on their face." Filing 1 at 105 (citing *Johnson*, 576 U.S. at 594). Petitioner also asserts that "[t]hey are also unconstitutionally vague as applied in [Petitioner's] case." Filing 1 at 105.

This is not the claim that Petitioner raised to the Nebraska Supreme Court. Petitioner asserted in his direct appeal to the Nebraska Supreme Court that "Neb. Rev. Stat. § 29-2523(1)(a) contains three disjunctive parts each of which can, standing alone, result in a finding of this aggravating factor if proved beyond a reasonable doubt." Filing 13-6 at 73–74. Petitioner's claim at the Nebraska Supreme Court was limited to "the third part of Neb. Rev. Stat. § 29-2523(1)(a)" (*i.e.*, the part saying an aggravating circumstance exists where the offender "has a substantial prior history of serious assaultive or terrorizing criminal activity") being unconstitutional on its face and as applied in the case. Filing 13-6 at 73. Petitioner did not provide the Nebraska Supreme Court with an opportunity to consider the claim he is making now, which is that Neb. Rev. Stat. § 29-2523(1)(a) as a whole is void for vagueness on its face and as applied. Filing 69 at 57 ("In subclaim 10.1, [Petitioner] asserted that Nebraska's prior violent felony aggravator defined in Nebraska Revised Statutes § 29-2523(1)(a) is unconstitutionally vague."); Filing 1 at 105 (quoting § 29-2523(1)(a) in full and saying that it is unconstitutionally vague in its entirety). This is despite the fact that the sentencing panel assessed both § 29-2523(1)(a) clauses and stated that "[t]he sentencing panel accepts the jury's verdict as to the existence of" the statutory aggravating factor saying that the "offender was previously convicted of another murder or a crime involving the use or threat of violence to the person." Filing 13-32 at 124–25 (saying Petitioner had a criminal history that enabled the jury to find "beyond a reasonable doubt that the defendant had been convicted of a crime involving the use or threat of violence to the person."); *see also* Filing 13-15 at 133, 148 (saying in the Order of Sentence *inter alia* that the three-judge sentencing panel "accepts the jury's

verdict as to the existence of" the aggravating factor concerning conviction of another crime involving the use or threat of violence" and that "the sentencing panel unanimously concludes that the non-statutory mitigating circumstance set forth above is not of sufficient weight to approach or exceed the weight the sentence panel gives to the two aggravating circumstances applicable to this murder").

The Court agrees with Judge Carson that the claim is procedurally defaulted because the claim Petitioner attempts to raise now is not the claim that Petitioner raised on direct appeal to the Nebraska Supreme Court. The Petitioner had one year from the "date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right [was] made applicable retroactively to cases on postconviction collateral review" to assert the claim in a verified motion for postconviction relief. *See* Neb. Rev. Stat. § 29-3001(4)(d). Like Judge Carson, the Court finds that if *Johnson* announced a new rule applicable to Petitioner's Claim 10.1, the postconviction claim should have been raised no later than one year after June 26, 2015, as that was the date that *Johnson* was decided. *Johnson*, 576 U.S. 591. It was not. As explained above, Claim 10.1—even if styled differently—was not presented to the Nebraska Supreme Court and Petitioner therefore did not give the Nebraska Supreme Court the "full and fair opportunity" to consider the claim. *O'Sullivan*, 526 U.S. at 845 ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *see Akins*, 410 F.3d at 454–55 (saying that, in Nebraska, the "full opportunity" on the direct appeal portion of the process ordinarily means that each § 2254 claim must have been

presented to the trial court, and then in an appeal to either the Nebraska Supreme Court directly or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner). The Court therefore agrees with Judge Carson that Claim 10.1 was procedurally defaulted. Petitioner asserts no other bases for excuse of the procedural default.

The aggravating circumstance that Petitioner argues is unconstitutionally vague in Claim 10.2 states: "The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence." Neb. Rev. Stat. § 29-2523(1)(d). Petitioner asserts that

> Both clauses of this aggravator [(*i.e.*, the "especially heinous, atrocious, or cruel prong" and "exceptional depravity prong")] supply no meaningful definition for Nebraska juries to consider in their determination as to whether it applies in a case. For this reason, [Petitioner] was deprived of due process and a reliable death sentence as required by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

Filing 1 at 110. The parties agree that the claim was raised on direct appeal. *See* Filing 13-6 at 78–88; Filing 26 at 63. Judge Carson recommended that the claim be denied on the merits under Eighth Circuit caselaw. *Ellis*, 2026 WL 123276, at *33. Petitioner objects to this recommended disposition, saying *inter alia* that the Nebraska Supreme Court's rejection of Petitioner's "arguments on the merits . . . was an unreasonable application of clearly established federal law." Filing 69 at 60.

The Eighth Circuit has explained that the "exceptional depravity" aggravator as modified in *State v. Palmer*, 399 N.W. 2d 706, 731–32 (Neb. 1986) (*Palmer III*), is "clearly constitutional." *Palmer v. Clarke*, 408 F.3d 423, 439 (8th Cir. 2005) (citation omitted). The aggravator in *Palmer III* was reformulated to include a list of five factors: "(1) [T]he apparent relishing of the murder by the killer, (2) the infliction of gratuitous violence on the victim, (3) the needless

mutilation of the victim, (4) the senselessness of the crime, and (5) the helplessness of the victim." *Clarke*, 408 F.3d at 439 n.8 (8th Cir. 2005) (alteration in original) (citing *Palmer III*, 399 N.W.2d at 731). As observed by Judge Carson, these are the same factors applied in Petitioner's case, and there is therefore no basis for a finding that the Nebraska Supreme Court's decision to deny Petitioner's void for vagueness challenge was contrary to, or involved an unreasonable application of, clearly established federal law. Filing 13-15 at 54. To the extent that Petitioner objects to the Nebraska Supreme Court's opinion in *Palmer III*, Judge Carson correctly observed that revisiting the state opinion in light of Petitioner's arguments would be inappropriate, as the Court is "obligated to follow the law as it is, not how [Petitioner] thinks it should be." *Ellis*, 2026 WL 123276, at *33. Under the caselaw of the Eighth Circuit, the Nebraska Supreme Court's decision to deny Petitioner's void for vagueness challenge under § 29-2523(d)(1) on the merits was not contrary to and did not involve and unreasonable application of clearly established federal law.

As noted by Judge Carson, Petitioner also filed a petition for writ of certiorari to the United States Supreme Court in which he alleged that his Eighth and Fourteenth Amendment rights were violated when the jury was instructed on an unconstitutionally vague aggravating factor. *See* Filing 13-8 at 2, 10–12. Many of the same arguments presented now were made in the petition, yet the Supreme Court denied the petition. Filing 13-8 at 2, 10–12; Filing 13-2 (denial of petition for writ of certiorari). Petitioner's objection is overruled.

*10. Petitioner's Tenth Specific Objection: Ineligibility for Death Penalty*

Petitioner's eleventh claim for relief—part of the basis for his tenth specific objection—states that he is "ineligible for the death penalty under the Eighth Amendment to the United States Constitution and *Atkins v. Virginia*." Filing 1 at 119 (internal emphasis omitted) (citing *Atkins v. Virginia*, 536 U.S. 304 (2002)). Petitioner asserts that, "[o]ver the course of his lifetime, [Petitioner's] IQ assessment scores place him in the range of intellectual disability" and that the

"Court must find that he is ineligible for execution." Filing 1 at 122. Petitioner's twelfth claim—the other part of Petitioner's tenth specific objection—states that Petitioner's "severe mental illness makes him ineligible for a death sentence under the Eight Amendment to the United States Constitution." Filing 1 at 122. Petitioner asserts he "was genetically predisposed to severe mental illness" and that "he has very substantial neuropsychological deficits and a documented history of abnormalities in the domains related to schizophrenia spectrum and other psychotic disorders as defined by the DSM-V," which make his death sentence unconstitutional. Filing 1 at 123–25.

Petitioner concedes that Claims 11 and 12 were not raised on direct appeal and were also not raised in the First PCM. Filing 54 at 81, 84. However, Petitioner contends that he has excuse to raise each claim under *Martinez-Trevino*. Filing 54 at 81, 84. Petitioner also asserts that the claims are not procedurally defaulted because the claims are raised in his Second PCM. Filing 54 at 81, 84. Judge Carson considered Claims 11 and 12 together and recommended that both claims be denied. *Ellis*, 2026 WL 123276, at *34. Judge Carson observed that the Court already determined that Petitioner's efforts to raise the claims in his Second PCM are futile as they are procedurally barred under state law. Judge Carson then noted that "the exceptions under *Martinez* do not apply because the claims were not brought under the guise of ineffective assistance of trial counsel in his habeas petition." *Id.* Judge Carson finally observed that there was "no evidence in the record which would establish an external impediment to [Petitioner] raising these claims on direct appeal as required by *Coleman*" and that Petitioner did not assert "a substantial claim for ineffective assistance of counsel sufficient to excuse his default." *Id.* (citing *Coleman*, 501 U.S. at 753).

Petitioner objects to Judge Carson's recommended disposition of Claims 11 and 12, arguing that Judge Carson's reasoning inappropriately rested on the fact that "the claims 'were not

brought under the guise of ineffective assistance of counsel in his habeas petition.'" Filing 69 at 61 (quoting *Ellis*, 2026 WL 123276, at *34). Petitioner does not assert Judge Carson was wrong that the Petition does not assert Claims 11 and 12 as ineffective assistance of counsel claims. Filing 69 at 61–63. Rather, Petitioner asserts that he can excuse procedural default under *Martinez-Trevino* because he "explained trial counsel's ineffectiveness in his Brief in Response to the Answer," which, according to Petitioner, is considered a pleading under Federal Rule of Civil Procedure 7. Filing 69 at 61 (citing Filing 54). Petitioner asserts that he also "raised trial counsel's ineffectiveness in his Brief in Support of Motion for *Rhines* Stay" and raised the issue in the "Second Verified Motion for Postconviction Relief, attached as Exhibit 3 to his Motion for *Rhines* Stay." Filing 69 at 61 (citing Filing 37; Filing 36-4).

"The Federal Rules of Civil Procedure may be applied to a proceeding under 28 U.S.C. § 2254 to the extent that they are not inconsistent with any statutory provisions or the Rules Governing Section 2254 Cases and Section 2255 Proceedings." *Burns v. Bolin*, Case No. 21-cv-1795 (WMW/ECW), 2022 WL 1607293, at *1 n.1 (D. Minn. May 20, 2022) (citing Rule 12, Rules Governing Section 2254 Cases in United States District Courts) (collecting cases). The Eighth Circuit has held that,

> in order to substantially comply with Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review.

*Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990). The Petition did not assert Claims 11 and 12 as ineffective assistance of counsel claims, and Petitioner's default therefore cannot be excused under *Martinez-Trevino*. Lastly, Judge Carson correctly notes that "even if considered further, the court can find no evidence in the record which would establish an external impediment to [Petitioner] raising these claims on direct appeal as required by *Coleman*." *Ellis*, 2026 WL

123276, at *34; *Coleman*, 501 U.S. at 753 (saying cause is "something external to the petitioner, something that cannot fairly be attributed to him" (emphasis omitted)). Petitioner's tenth objection is overruled.

*11. Petitioner's Eleventh Specific Objection: Unconstitutionality of Nebraska's Capital Sentencing Scheme*

Petitioner's eleventh specific objection—and thirteenth claim for relief—asserts that "Nebraska's capital sentencing scheme, requiring a panel of judges to make the findings of fact necessary to impose a death sentence, is unconstitutional under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and *Hurst v. Florida*." Filing 1 at 125 (citing *Hurst*, 577 U.S. 92). Petitioner further asserts that *Hurst* applies retroactively to cases on collateral review. Filing 1 at 128–133 (arguing *Hurst* applies retroactively under a *Teague* analysis). Petitioner concludes that "[t]he Nebraska Supreme Court's decision is . . . unreasonable . . . particularly because the *Hurst* rule must be applied retroactively." Filing 1 at 133.

Judge Carson found, however, "the Supreme Court has since made clear that *Hurst* does not apply retroactively on collateral review." *Ellis*, 2026 WL 123276, at *34. In his Objections, Petitioner appears to not contest the conclusion that *Hurst* does not apply retroactively, saying "he objects in order to preserve this claim for later review" because Petitioner maintains that the case Judge Carson relied on, *McKinney v. Arizona*, 589 U.S. 139 (2020), "is wrongly decided." Filing 69 at 64. This makes sense because *McKinney* states in no uncertain terms that "*Hurst* [does] not apply retroactively on collateral review." *McKinney*, 589 U.S. at 145.

Petitioner does not appear to object to Judge Carson's recommended disposition when Petitioner's *Hurst*-based arguments are not considered. Filing 69 at 65; Filing 54 at 86 (saying Petitioner "recognizes that the Supreme Court has found that *Hurst* does not apply retroactively to

cases on collateral review. Nonetheless, because [Petitioner] believes that case to be wrongly decided, he maintains his legal arguments to the contrary in order to preserve this issue for future review should the state of the law change" and not making any independent constitutional argument). Nonetheless, like Judge Carson and the Nebraska Supreme Court, the Court finds that the Nebraska death penalty scheme, rests on approved constitutional foundations. *Compare* Filing 13-1 at 21 (the opinion of the Nebraska Supreme Court on direct appeal saying *Ring v. Arizona*, 536 U.S. 584 (2002), "does not require that a jury make findings other than the existence of the aggravating circumstances upon which a capital sentence is based and that neither *Ring* nor any other authority 'require[s] that the determination of mitigating circumstances, the balancing function, or proportionality review be undertaken by a jury'" (internal quotation marks omitted) (citations omitted)), *with McKinney*, 589 U.S. at 144 (saying "[u]nder *Ring* and *Hurst*, a jury must find the aggravating circumstance that makes the defendant death eligible. But importantly, in a capital sentencing proceeding just as in an ordinary sentencing proceeding, a jury (as opposed to a judge) is not constitutionally required to weigh the aggravating and mitigating circumstances or to make the ultimate sentencing decision within the relevant sentencing range"); Filing 69 at 64–65 (leaving uncontested Judge Carson's finding that "[t]he primary contention underlying all of [the] [sub]claims [making up Claim 13] is what the jury must decide, as opposed to judges," *Ellis*, 2026 WL 123276, at *35). Petitioner's eleventh objection is overruled.

*12. Petitioner's Twelfth Specific Objection: Proportionality Review and Race*

Petitioner's fourteenth claim—which forms the basis of his twelfth specific objection—asserts that "[t]he imposition of the death penalty on the basis of race violates the Eighth and Fourteenth Amendments to the United States Constitution." Filing 1 at 142. Petitioner further asserts that "[t]he death penalty was imposed arbitrarily, capriciously, and discriminatorily against [him] on the basis of his race in violation of the Eighth and Fourteenth Amendments." Filing 1 at

142 (citing *Gregg v. Georgia*, 428 U.S. 153, 188 (1976)). Petitioner asserts generally that "[t]he death penalty is disproportionately applied against Black defendants when an allegation of rape is involved," and that, "[h]ere, the basis for finding the statutory aggravating factor found at Nebraska Revised Statutes § 29-2523(1)(d) was the circumstantial evidence of sexual assault." Filing 1 at 143–44. Petitioner concludes that his death sentence was therefore imposed in violation of the Eight and Fourteenth Amendments. Filing 1 at 144.

Petitioner concedes that this claim is procedurally defaulted but asserts that he "can overcome his procedural default because the Supreme Court has announced a new rule of constitutional law in *Students for Fair Admissions*." Filing 54 at 87 (citing *Students for Fair Admissions v. President & Fellows of Harv. Coll.*, 600 U.S. 181 (2023)). More specifically, Petitioner asserts that "[t]he proportionality review of the Nebraska Supreme Court undeniably considers the race of the defendant as a point of comparison."[6] Filing 54 at 87. Judge Carson correctly observed, however, that "the analysis in *Students for Fair Admissions* [is] inapplicable." *Ellis*, 2026 WL 123276, at *36. *Students for Fair Admissions* held that the race-conscious admissions policies of Harvard College and the University of North Carolina violated the Equal Protection Clause of the Fourteenth Amendment. *Students for Fair Admissions, Inc.*, 600 U.S. at 230. That case is an Equal Protection decision concerned with race-conscious decision-making. *Id.* The case was not a Sixth or Eighth Amendment sentencing case. The Nebraska Supreme Court's proportionality review that Petitioner challenges never considered Petitioner's race.

[6] Under Neb. Rev. Stat. § 29-2521.03, the Nebraska Supreme Court "shall, upon appeal, determine the propriety of the sentence in each case involving a criminal homicide by comparing such case with previous cases involving the same or similar circumstances. No sentence imposed shall be greater than those imposed in other cases with the same or similar circumstances." In its decision regarding Petitioner's appeal, the Nebraska Supreme Court conducted a proportionality review and provided comparisons to *State v. Gales*, 694 N.W.2d 124 (Neb. 2005), and *State v. Williams*, 287 N.W.2d 18 (Neb. 1979). Filing 13-1 at 33–34. The Nebraska Supreme Court concluded that "[h]aving reviewed our capital jurisprudence, and taking note of comparable cases, we are persuaded that the imposition of the sentence in this case was not greater than those imposed in other cases with the same or similar consequences." Filing 13-1 at 34.

Rather, the review considered the facts and circumstances in *State v. Gales* and *State v. Williams* in determining that "the imposition of the sentence in [Petitioner's] case was not greater than those imposed in other cases with the same or similar circumstances."[7] Petitioner's race had nothing to do with the Nebraska Supreme Court's comparisons and conclusions. It is also worth mentioning that Petitioner levies a broad assertion that Nebraska's proportionality review is "tainted by the overwhelming bias against racial minorities in Nebraska's use of the death penalty," as "[e]ight of Nebraska's eleven death row inmates are racial minorities." Filing 69 at 67–68; *see* Filing 1 at 142–144. Petitioner's broad assertion is highly conjectural and asserts no specific bases for the Court to make the strained inference that Petitioner asks the Court to make. Petitioner's twelfth objection is therefore overruled.

*13. Petitioner's Thirteenth Specific Objection: Unconstitutionality of Death Penalty and Selective Imposition of Death Penalty*

Petitioner's final claim asserts that his "death sentence violates the Eighth Amendment to the United States Constitution's prohibition against cruel and unusual punishment." Filing 1 at 144. The claim appears to assert that the death penalty itself is unconstitutional. Filing 1 at 145 Petitioner asserts that "[t]he death penalty no longer comports with evolving standards of decency." Filing 1 at 145 (original emphasis omitted). Petitioner also asserts that "[t]he death

---

[7] In particular, the Nebraska Supreme Court observed,

> In *Gales*, the defendant was convicted of, as relevant, two counts of first degree murder. The defendant had, as relevant, raped and murdered a 13-year-old girl and murdered her 7-year-old brother because he was a potential witness. The defendant was sentenced to death based on findings that he had previously been convicted of a crime of violence, he committed the murders in an effort to conceal his identity as the perpetrator, he committed another murder at the same time, and, with respect to the girl, the murder was especially heinous, atrocious, or cruel.

Filing 13-1 at 33 (footnotes omitted). With respect to *Williams*, the Nebraska Supreme Court explained,

> [T]he defendant was convicted of two counts of murder in the first degree, and one count of first degree sexual assault, after he shot two women, raping one of them. He was sentenced to death based upon findings that he had previously been convicted of a crime of violence, he committed the murders at the same time, and the murder was especially heinous, atrocious, or cruel.

Filing 13-1 at 33–34 (footnotes omitted).

penalty is excessive" and that "[t]he death penalty is unconstitutional because it does not ensure reliability, consistency, and equal protection of the laws." Filing 1 at 148–49. As noted by Judge Carson, these claims are procedurally defaulted because the broad challenges Petitioner makes to the constitutionality of the death penalty were not raised in his appeal. No excuse is made for the default. *Ellis*, 2026 WL 123276, at *36. Petitioner does not contest this finding in his objection and does not attempt to provide an excuse. Filing 69 at 68–71. The claims are also without merit, as the Supreme Court of the United States has somewhat recently stated that "[t]he Constitution allows capital punishment." *Bucklew v. Precythe*, 587 U.S. 119, 129 (2019); *see also Baze v. Rees*, 553 U.S. 35, 47 (2008); *Glossip v. Gross*, 576 U.S. 863, 869 (2015).

Petitioner attempts to assert new grounds for relief in his objection. Rather than arguing—as he did in his Petition—that the death penalty itself is unconstitutional, Petitioner asserts, citing *Furman v. Georgia*, 408 U.S. 238 (1972), that "a death sentence is unconstitutional if it [is] imposed selectively, irregularly, and arbitrarily. Because of the compounded errors of the trial court, trial counsel, and postconviction counsel, combined with [Petitioner's] intellectual disability, his death sentence was imposed selectively, irregularly, and arbitrarily and is unconstitutional." Filing 69 at 71; *Furman*, 408 U.S. at 239–40. The Court need not consider this argument. By failing to assert the argument elsewhere, the argument was waived. *Ridenour v. Boehringer Ingelheim Pharms., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) ("Ridenour was required to present all of his arguments to the magistrate judge, lest they be waived. When a magistrate judge is hearing a matter pursuant to his or her limited authority to make a recommended disposition, 'a claimant must present all his claims squarely to the magistrate judge, that is, the first adversarial forum, to preserve them for review.'" (citations omitted)); Filing 1 at 144–51; Filing 54 at 88–89. Nonetheless, the Court found no merit in any of Petitioner's claims, and

Petitioner's argument that "compounded errors" and his "intellectual disability" caused the death penalty to be imposed selectively, irregularly, or arbitrarily is therefore unavailing. Filing 69 at 71. Petitioner's thirteenth objection is overruled.

### D. Certificate of Appealability

"When the District Court has denied a motion under 28 U.S.C. § 2254, the Petitioner may not appeal without a certificate of appealability. Such a certificate may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Siers v. Dooley*, No. CIV. 14–4007, 2014 WL 2600300, at *6 (D.S.D. June 10, 2014) (quoting 28 U.S.C. § 2253(c)(2)). "A 'substantial showing' under this section is a showing that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Said differently, "a 'substantial showing' is made if a 'court could resolve the issues differently, or the issues deserve further proceedings.'" *Id.* (quoting *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997)). Petitioner has not made a substantial showing that he has been denied a constitutional right. A certificate of appealability will not issue.

## III. CONCLUSION

Upon the foregoing

IT IS ORDERED that,

1. Petitioner's requests for reconsideration or an evidentiary hearing are denied;
2. Petitioner's Objections, Filing 69 are overruled;
3. Judge Carson's Findings and Recommendation, Filing 62, is accepted;
4. Petitioner's Writ for Habeas Corpus, Filing 1, is denied; and
5. A certificate of appealability will not issue.

Dated this 4th day of September, 2026.

BY THE COURT:

______________________________

Brian C. Buescher
Chief United States District Judge